SAMUEL B. WILLIAMS, as Administrator, etc., Appellant, *v.* LUCY A. GUILE, Respondent.

117 343
125 579

In order to establish a valid gift, *causa mortis,* it is not necessary to show that the donor was *in extremis,* or confined to the bed or room, or that he died within a certain limited time thereafter ; it is sufficient if it appears the gift was made during the existence of a bodily disease, or illness which imperiled the donor's life, and when he must be deemed to have had his death in view, and that death occurred from the disorder or illness.

A., about six weeks before his death, executed to defendant an instrument, in form a bill of sale, of a policy of insurance upon his life, and delivered it to W., his attorney, with instructions to deliver it to defendant in case anything happened to him. The instrument contained a clause empowering A. to revoke the transfer at any time during his life. He had already had two strokes of paralysis, and a third caused his death. After such death W. delivered the policy and assignment to G., who collected the amount due thereon. In an action brought by A., as executor, to recover the same, *held,* that while the transaction lacked some of the elements essential to a valid gift, *inter vivos,* it was a valid gift, *causa mortis;* and that as the facts were undisputed the question as to the donor's intent was one of law, and a direction to the jury to find a verdict for the defendant was proper.

Reported below, 46 Hun, 645.

(Argued October 25, 1889; decided November 26, 1889.)

APPEAL from judgment of the General Term of the Supreme Court in the fifth judicial department, in favor of defendant, entered upon an order made December 30, 1887, which denied a motion for a new trial and directed judgment in favor of defendant on a verdict, exceptions having been ordered to be heard at first instance at General Term.

The nature of the action and the material facts are stated in the opinion.

*George F. Yeoman* for appellant. This action is maintainable provided the defendant has no title to the policy. (*Carver* v. *Creque*, 48 N. Y. 385 ; *N. T. Co.* v. *Gleason*, 77 id. 408 ; *Moses* v. *McFarlin*, 2 Burr. 1005, 1012 ; *Tugman* v. *N. S. Co.*, 76 N. Y. 210 ; Leake on Cont. 90.) The defendant had no title to the policy. (*Grymes* v. *Hone*, 49 N. Y. 20, 21 ; 1 Parsons on Cont. 236 ; *Irish* v. *Nutting*, 47 Barb. 383, 385, 387 ; *Stone* v. *Flower*, 47 N. Y. 566 ; Wood's Trial Prac. 228–231 ; *Jackson* v. *T. T. S. R. Co.*, 88 N. Y. 520, 526 ; *Young* v. *Young*, 80 id. 422–436 ; *Curry* v. *Powers*, 70 id. 212 ; 2 Shouler on Per. Prop. 118, 119 ; *Bedell* v. *Carll*, 33 N. Y. 581, 584 ; *Stanton* v. *Miller*, 58 id. 201, 202 ; *Hathaway* v. *Paine*, 34 id. 104, 105 ; *James* v. *Vander Heyden*, 1 Paige, 385 ; *Bernard* v. *Cushing*, 4 Metc. 230 ; *Van Dusen* v. *Rowley*, 8 N. Y. 358.) The direction of a verdict for the defendant was error, even if the evidence does not show conclusively that she had no title. (*Bagley* v. *Rowe*, 105 N. Y. 171, 179.)

*Edward Webster* for respondent. Plaintiff must show affirmatively that the instruments were not delivered ; and, failing in that, the delivery is established. (*Carnes* v. *Platt*, 9 J. & S. 435 ; *People* v. *Snyder*, 41 N. Y. 402 ; Bouv. Law Dict. ; Tomlyn's Law Dict., Title, Deed.) The assignment was made upon sufficient consideration. (*Livingston* v *Tremper*, 4 Johns. 416 ; *Best* v. *Thiel*, 79 N. Y. 16 ; *McCrea* v. *Permont*, 16 Wend. 460 ; *Vrooman* v. *Phelps*, 2 Johns. 177 ; *Dorr* v. *Munsall*, 13 id. 430 ; *Franchot* v. *Leach*, 5 Cow.

506 ; *Gray* v. *Barton*, 55 N. Y. 68.)  A delivery to a third person, either as as a depositary or in escrow, to be delivered after death, is a proper and binding delivery.  (*Wall* v. *Wall*, 30 Miss. 92 ; *Ruggles* v. *Lawson*, 13 Johns. 285 ; *Hathaway* v. *Paine*, 34 N. Y. 92 ; *Wheelwright* v. *Wheelwright*, 2 Mass. 447 ; *Hatch* v. *Hatch*, 9 id. 307 ; *Doe* v. *Knight*, 5 B. & C. 671 ; 15 Wend. 663 ; 20 id. 47 ; 2 Hill, 643 ; 17 Barb. 83 ; 19 id. 245 ; 15 id. 362 ; 22 How. 399 ; 34 N. Y. 106 ; 4 Abb. 319.)  A party or interested person present at a transaction or conversation between the deceased and a third person, but who does not participate therein, is competent to testify to the transaction or conversation.  (*Hildebrant* v. *Crawford*, 65 N. Y. 107 ; *Cary* v. *White*, 59 id. 336 ; *Badger* v. *Badger*, 88 id. 546 ; *Simmons* v. *Havens*, 101 id. 427.)  The delivery of the insurance policy, accompanied by the duplicate assignments of the same, constituted a gift *causa mortis*, and on the death of said Andrews, without exercising the power of revocation reserved in the assignment, vested in the donee absolute title.  (*Grymes* v. *Hone*, 49 N. Y. 17 ; *Champney* v. *Blanchard*, 39 id. 111 ; *Curtiss* v. *Barrus*, 38 Hun, 167 ; *Smith* v. *Maine*, 25 Barb. 33 ; *Hackney* v. *Vrooman*, 62 id. 650 ; *Ruggles* v. *Lawson*, 13 Johns. 285 ; *Hathaway* v. *Payne*, 34 N. Y. 92 ; *Craine* v. *Wright*, 36 Hun, 74 ; *Wells* v. *Tucker*, 3 Binn. 366 ; *Michaner* v. *Dale*, 23 Penn. St. 59 ; *Tooley* v. *Dibble*, 2 Hill, 641 ; *Clough* v. *Clough*, 117 Mass. 83 ; 2 Kent's Com. 445 ; *Bloomer* v. *Bloomer*, 2 Bradf. 339 ; *Merchant* v. *Merchant*, Id. 445 ; *Wigle* v. *Wigle*, 6 Watt. 522 ; *Marshall* v. *Berry*, 13 Allen, 46 ; *Nicholas* v. *Adams*, 2 Whart. 22 ; *Bunn* v. *Markham*, 7 Taunt. 224.)

GRAY, J.  This case presents a question whether a disposition of some personal property by the intestate, at a short time prior to his death, was valid, either as an executed gift *inter vivos*, or as a gift *causa mortis*.

The plaintiff, as administrator of the intestate donor, brought the action to recover back the subject of the gift from the defend-

ant, on the ground that she had no valid title to it.   Upon the facts, as developed on the trial, the judge presiding thereat ordered the jury to find a verdict for the defendant and the General Term have affirmed his action.   The case made showed that about six weeks before his death occurred, the intestate executed an instrument, in the form of a bill of sale to his niece, Mrs. Guile (this respondent), of a policy of insurance on his life.

In the instrument was a clause empowering him to revoke the transfer at any time during his life.   This instrument and the policy the intestate delivered to one Webster, who acted as his attorney in drawing the instrument.   After the death occurred Webster delivered the policy and assignment to Mrs. Guile, and she has collected its amount from the insurers. At the time of the delivery of the policy the intestate said to Webster that, if anything happened to him, he should give or hand it to her, Mrs. Guile.   Webster, who, with his son, gave the only evidence in the case concerning the transaction, testified that the intestate " spoke about her being in his family and doing so much for him   *   *   *   the fact was that I was to give the policy and assignment to Mrs. Guile if something happened to Mr. Andrews ;   *   *   *   my understanding of the matter was that I was to deliver this in case of death or incapacity, or something of that kind ;   *   *   *   they were placed in my hands to hand to her if anything happened to him ; I was depository of the papers for Mrs. Guile and should give them to no one else."

The son corroborates the father's testimony, as to his instructions upon the delivery of the policy.   It appears that though the intestate looked well at the time of the transaction, he had already had two strokes of paralysis, and from the third stroke, about six weeks later, he lingered a few days in sickness until death came.

Now, upon these facts, opinions may differ as to what was the legal effect of the act of the deceased, as to whether there had been a valid transfer or gift to Mrs. Guile, as the General Term have thought ; or, whether there was a gift in antici-

pation of the death of the donor from an impending peril to his life.

But I do not think there was any room for opposite inferences as to the intention of the donor. The facts were undisputed and not conflicting, and they evidenced an unmistakable and clear intent that Mrs. Guile should have the benefit of the policy ; unless the gift was revoked during his life. In order that a case should be submitted to a determination by the jury, it must present the possibility of different inferences being drawn from the proof. But where, on undisputed facts, the conclusion to be arrived at is as to the legal effect, there is nothing for the jury to pass upon, and a verdict is properly directed on the legal construction given by the trial judge.

A test as to the propriety of refusing to submit a question to the jury is, whether their verdict could be set aside as contrary to evidence. (*Cagger* v. *Lansing*, 64 N. Y. 417, 427.) In this case, I think the intention of the deceased, in this transaction, to have been perfectly clear. I do not agree with the opinion of the court at General Term that there was a complete delivery to Mrs. Guile, and hence a valid executed gift; but I think there was a valid gift *causa mortis*. The elements, which go to make up a valid executed gift, were incomplete here. There was absent the essential feature of such a delivery as divested the donor of all possession and dominion over the subject of the gift.

If the present right to the property is not parted with, so as to vest the title to it in the donee, there is no valid executed gift. (*Young* v. *Young*, 80 N. Y. 430; *Jackson* v. *Twenty-third St. R. R. Co.*, 88 id. 520.) As RUGGLES, J., said, in *Harris* v. *Clark* (3 N. Y. 113): "The contract must have been executed. The thing given must have been put into the hands of the donee, or placed within his power by delivery of the means of obtaining it."

Here, not only was the instrument, purporting to assign to Mrs. Guile the property, made revocable by its terms; but the evidence of Webster, to whom the policy and instrument of transfer were given in custody, shows that that instrument,

was not to take effect *in presenti* at all. The donor retained control over the property; for he reserved the right to revoke the gift of it, at any time during his life, and it was not, and it could not, be given by Webster to Mrs. Guile at any time during the intestate's life.

I think that the court below, in holding that there was an executed gift or sale, did not give due weight to the fact that the gift was not *in presenti*. No present possession or dominion did or could pass to the donee, and the absence of such a feature precludes us from deeming the gift to have been complete by delivery. But there was sufficient in the case as made to establish a gift *causa mortis*. Such a gift Judge STORY described as amphibious, between a gift *inter vivos* and a legacy. (Eq. Jur., § 606.) He says it differs from a gift *inter vivos* in several respects in which it resembles a legacy, and he mentions as one that "It is ambulatory, incomplete and revocable during the donor's lifetime." And LEACH, Vice-Chancellor, in *Gardiner* v. *Parker* (3 Madd. 102), said that wherever a gift is in prospect of death, there is an implied condition that it is to be held only in the happening of that event. The distinction between such a gift and any other is that, though delivery is an essential feature in each, in the former that peculiar character of revocability inheres during the donor's life. NOTTINGHAM, Lord Chancellor, said, in *Edwards* v. *Jones* (1 Myl. & Craig, 226): "A party making *donatio causa mortis* does not part with the whole interest, save only in a certain event, and it is of the essence of such a gift that it shall not otherwise take place. * * * It leaves the whole title in the donor, unless the event occurs which is to divest him." Judge STORY said of such gifts (Eq. Jur., § 607) that the courts have "not considered the interest as completely vested by the gift; but that it is so vested in the donee that the donee has a right to call on a court of equity for its aid." The title of the donee only becomes absolute at the donor's death, when, by relation, it is deemed to take effect from the time of the delivery. (1 Williams on Executors, 552.) Until the donor's death, the condition is implied that he may always

revoke it, and, in the case of an illness, if he lives, the thing shall be restored to him. It is not necessary that the donor should declare the condition. The presence in this instrument of transfer here, of a clause giving power to revoke indicates nothing more than an expression of what was implied in the law in a gift *causa mortis.*

But this transaction possessed the additional distinctive feature, required to be present to constitute a gift *causa mortis*, of its having been made when the donor must be deemed to have had his death in view, as the possible result of an existing disorder. It is not necessary that the donor should have been in *extremis;* only, that his death, when it occurred, should be from the disorder which afflicted him and menaced his life. (*Grymes* v. *Hone*, 49 N. Y. 20.) The rule of law, in such cases of gifts made in prospect of death, demands for their validity that the proof shall show the existence of a bodily disorder, or of an illness, which imperils the donor's life and which eventually terminates it. But that he should be confined to his bed, or his room, or that he should die within a certain limited time, are not essential circumstances to support such a gift. It is a matter within the experience and common knowledge of all, and one requiring no evidence to show, that paralysis is a symptom of a disease which does terminate human life. Its strokes are known to cause to the victim a loss of bodily functions, or senses, and point to the existence of some grave ailment of the bodily system. It is quite a matter of common supposition, or belief, that the third stroke is followed by death. I think that we are bound to presume that, when death has occurred from disease, indicated by paralysis, a transaction, such as we have here, and which took place after the individual had been admonished by two paralytic strokes, was conducted with a view to death. It is unreasonable to say that the donor, in so acting, was not under the apprehension of a recurrence of the paralysis. We see him, at the age of seventy years, without wife or children, after having been twice stricken down with paralysis, delivering to his lawyer, Webster, a piece of prop-

·erty, with the instruction that if anything happened to him he should deliver it to a niece who had lived with him. This presents a state of facts which, in my opinion, permits but of one legal conclusion. It was not a gift *inter vivos* which was sought and effected, but a gift *causa mortis ;* which at common law served as a description of a revocable gift, and in the civil law partook of the nature of a legacy. The very insertion by the intestate in the instrument of assignment of the power to revoke it emphasizes his otherwise evident intention of making a gift to his niece in the contingency of the more or less near approach of death. I see no error committed upon the trial which calls for a reversal at our hands, and I think the judgment appealed from, for the reasons stated, should be affirmed, with costs.

All concur.

Judgment affirmed.