In the Matter of the Judicial Settlement of the Account of CHRISTOPHER C. CROSBY, Ex'r of Walter Essex, Deceased.

*(Surrogate's Court, Cattaraugus County, Filed November 10, 1891.)*

1. GIFTS CAUSA MORTIS—DELIVERY.

Testator, who had no wife or children, held a note of the executor, who was an intimate friend. During his last illness he asked his niece to bring his papers, and gave her this note, telling her that he had given it to Crosby; that he knew of it, that she was to keep it, and that he did not want his heirs to know anything about it. *Held.*

that this constituted a valid gift *causa mortis* of the note to the executor, and that there was a sufficient delivery.

2. SAME—COLLATERAL INHERITANCE TAX.

The executor received said note subject to the collateral inheritance tax.

3. EXECUTORS AND ADMINISTRATORS—INTEREST.

Where an executor commingles the avails of the estate with his own funds and uses them for his personal benefit, he is chargeable with interest.

Judicial settlement of accounts.

C. D. Van Aernam, for executor and claimant; N. M. Allen, for contestants.

SPRING, S.—The testator held a note of $1,000 against the executor which he had owned since 1876.

The executor claims this note as a gift from Mr. Essex, and asserts his ttle thereto in the inventory filed and does not include it among the assets of decedent in his account rendered in this proceeding.

Objections are presented to the account by the legatees for this omission, and the validity of the alleged gift is thus brought in controversy.

The testator at the time of his death was well along in life, without wife or children, and an intimate friend of the executor, his alleged donee.

His niece, who was the only witness as to the alleged present, had been his housekeeper for several years, an devidently was trusted and appreciated by him, for he made her his beneficiary to the amount of $1,000.

Mr. Essex was taken with hemorrhage of the lungs in the village of Franklinville, was removed to a hotel and remained there continuously until his death, which occurred in about two months after the first attack.

He realized from the first that his recovery was impossible. He had a farm and three or four thousand dollars in securities.

A day or two after his affliction he directed his niece to bring his papers from the farm, which she did, and kept them, including this note, in her possession, until after his death. Early in his sickness he requested her to get this note against Crosby, and when brought to him took it in his hands and then handed it back to her, telling her he had given this note to Christopher Crosby; that she was to remember this; that he did not wish his heirs or any one else to know of this gift; that Crosby knew about it and that she was to take it and keep it, evidently meaning until his death.

He reiterated to her a few days before his death the statement of this present, and again enjoined upon her to remember it and also to keep it secret.

Two of the essentials necessary to a valid gift of this kind are unmistakably present.

1st. That it was given in view of the donor's death; and 2nd, that he died of the ailment with which he was afflicted at the time the present was made.

Was there a sufficient delivery of the note?

In case of gifts *cause mortis* physical possession of the property is not necessarily parted with by the donor. The right of revocation inheres in the donor in case of recovery, and that is the characteristic distinguishing gifts of this kind from those *inter vivos*. Williams v. Guile, 117 N. Y. 343-348, 27 St. Rep. 253.

The note in controversy was especially designated by the donor. His intention to make the gift is established by clear, unequivocal testimony, and his direction to his attendant to retain the custody of the note during his lifetime, and his evident care that his executor, the donee, should be assured in its possession upon his death, are amply adequate to make a sufficient delivery and constitute the custodian of the note his agent to render effectual the donation. Grymes v. Hone, 49 N. Y. 17; Williams v. Guile, 117 id. 343, 27 St. Rep. 253; Hathaway v. Payne, 34 N. Y. 92.

In the first case cited the donor made a written assignment of

twenty shares of stock to a granddaughter, and gave the assignment to his wife to give to the donee upon his death.    The court, in sustaining this as a valid gift *causa mortis,* held that the wife was the agent of the donor to effectuate the donation.

Testator was desirous that the fact of this gift should not be divulged to his legatees.    Evidently he thought to accomplish this by making his donee his executor.

He told his housekeeper that Crosby knew of this gift, and it is fairly inferential that the old gentleman expected in this way to work out the formal delivery of the note without any publicity.    That when Crosby obtained the securities he would destroy this note.

In no other way can we spell out his extreme caution, and his designation of Crosby as his executor adds significant force to this inference.

Crosby, however, received this note subject to the collateral inheritance tax.    Chap. 713, Laws of 1887, sec. 1.

The executor received the avails of the estate and commingled them with his own funds, and used them for his personal benefit, and is therefore chargeable with interest, which I have adjusted in the statement of the account embodied in the findings herein.