[Civ. No. 1411.   Third Appellate District.—July 22, 1916.]

## PACIFIC COAST DRIED FRUIT COMPANY (a Corporation), Appellant, v. CHARLES SHERIFFS et al., Doing Business Under the Firm Name of the Sheriffs Brothers Company, Respondents.

SALE OF PRUNE CROP—ACTION FOR BALANCE DUE—OWNERSHIP—EVIDENCE —PLAINTIFF NOT REAL PARTY IN INTEREST.—Where, in an action to recover a sum of money alleged to be the balance due on a contract for the sale of a crop of dried prunes, the case was tried and decided upon the sole theory that the plaintiff was not the real party in interest, by reason of the fact that the prunes were owned by the individual lessee of the ranch upon which they were grown, and not by the plaintiff corporation, which such lessee organized and of which he owned all the capital stock, except a few shares issued for the working purposes of the corporation, the judgment will not be disturbed upon appeal, even though the evidence upon the question of such ownership was not in conflict, where such evidence was of a character that the trial court was warranted in discrediting it.

ID.—EVIDENCE—REJECTION OF TESTIMONY—RIGHT OF TRIAL COURT.—It is within the legal province or discretion of the trial court to reject *in toto* the testimony of any witness, but such rejection must not be arbitrary.

APPEAL from a judgment of the Superior Court of Sonoma County.   Thos. C. Denny, Judge.

The facts are stated in the opinion of the court.

R. L. Thompson, and T. J. Butts, for Appellant.

T. J. Geary, for Respondents.

HART, J.—The plaintiff appeals from a judgment rendered and entered against it and in favor of the defendants.

The action is for the recovery of the sum of $1,887.12, alleged to be the balance due from the defendants to the plaintiff on a contract of sale made and entered into between the parties on the twenty-ninth day of September, 1913, whereby, it is alleged, the plaintiff sold and delivered to the defendants 132,878 pounds of dried prunes, at the agreed price of one hundred dollars per ton for the first ten tons thereof and $120 per ton for the balance thereof.

The undisputed facts are: That one H. W. Eberling was, in the year 1913, and for several years prior thereto, the lessee of the prune orchard known as the "Leak Ranch," situated on Mark West Creek, in Sonoma County. He also, in the year 1913, was the lessee of another prune orchard, in said county, known as the Gibbons Ranch. On the first day of May, 1913, the said Eberling entered into a written contract with the California Fruit Canners' Association, whereby he agreed to sell and deliver to said association from forty to fifty tons of dried prunes, grown on the Leak and Gibbons ranches, at "3 cent base," said prunes to be delivered on board of cars at a station called Fulton, in Sonoma County. The consummation of said contract of sale was made dependent upon the happening of certain conditions pertaining to quality of fruit as dried. Upon the execution of said contract, the California Fruit Canners' Association paid said Eberling the sum of five hundred dollars, in two different checks made payable to Eberling, one for two hundred dollars and the other for three hundred dollars. Thereafter, and before the prunes or any portion thereof were delivered, the canners' association paid Eberling the additional sum of two hundred dollars, making a total payment of seven hundred dollars.

On the fifteenth day of August, 1913, the following contract was mutually entered into by Eberling Bros. and the defendants:

"In consideration of the sum of one dollar by each to the other paid, the receipt of which is hereby acknowledged, Eberling Bros. has this day sold, and Sheriffs Brothers Company of Healdsburg, Cal., have this day bought my crop of Dried French and Sugar prunes grown on what is known as Leak and Givins ranches Est 100 tons more or less.

10 tons @ $100.00 per ton
Balance @ $120.00  "  "

"It is hereby expressly agreed that said fruit shall be delivered in first class order, all of which is to be of choice merchantable quality, thoroughly cured and well dried.

"Any wet or rain damaged stock is to be weighed back, or taken at a reduced price as may be agreed upon.

"To be delivered at on board cars Mark West.

"Terms—Cash on delivery.

"Seller Eberling Bros.,
"Sheriffs Brothers Company,
"By Chas. Sheriffs."

These further facts are also undisputed: That, subject to the conditions of the foregoing contract, viz., that the prunes so bargained for should "be delivered in first class order, all of which are to be of choice, merchantable quality, thoroughly cured and well dried," etc., the defendants bought the crop of prunes on the ranches in said contract named, estimated at one hundred tons, at the rate of one hundred dollars per ton for the first ten tons and $120 per ton for the remainder, the fruit to be delivered on board the cars at the railroad station at Mark West, in Sonoma County; that all the prunes, except the two cars in dispute here, were so delivered to the defendants and received by them at Healdsburg, in said county; that all the prunes were, prior to the commencement of this action, paid for except the last two cars, which are involved in this action and which amounted in money to the sum herein sued for; that, when the said last two cars reached Healdsburg, the place of consignment, the California Canners' Association seized and took possession of them in an action brought by it in claim and delivery, said association claiming to be the owner of said prunes by virtue of its contract with H. W. Eberling, above mentioned herein; that H. W. Eberling had, prior to the seizure by the canners' association of the two cars of prunes as above indicated, delivered to the said association nine or ten tons of prunes, which amounted to more in money than the sum of seven hundred dollars which was advanced to said Eberling by the canners' association.

The appellant expressly admits these facts: That H. W. Eberling was the lessee of the Leak and Gibbons ranches, and owned half the prune crops grown thereon; that H. W. Eberling entered into the contract, above referred to, with the canners' association for the sale of the prunes in controversy in this action; that, after the making of the contract between the canners' association and H. W. Eberling, and before the making of the contract between Eberling Bros. and the defendants, the plaintiff was incorporated. The disputed fact in the case and upon which the decision of the controversy is made to hinge is whether the fruit in question was sold to the plaintiff by Eberling prior to the making of the contract with the defendants.

The plaintiff contends that the determination of the ultimate issue presented here is whether the contract between Eberling

and the canners' association is merely executory or constituted a sale. "If it was a sale," proceeds the plaintiff, "then the title passed to the canners' company and Eberling could not thereafter convey the fruit to the Pacific Coast Dried Fruit Company. And if the canners' fruit was shipped to Sheriffs Bros. at Healdsburg, the canners' company had a right to replevin it." On the other hand, continues the plaintiff, "if said contract was executory and Eberling had until the fifteenth day of October, 1913, in which to fulfill it, and he did not fulfill his contract by that time, the California Canners' Association had an action for damages against H. W. Eberling, but it had no title to the fruit, and the sale of the fruit to the Pacific Coast Dried Fruit Company was valid, as was the sale to Sheriffs Bros."

Counsel for the appellant then proceeded to show that the contract referred to was executory, and that, therefore, the canners' association did not, and could not, acquire title to the fruit until the same was delivered to and accepted by it.

The case, however, was tried and decided upon the sole theory that the defendants never entered into any contract with the plaintiff whereby the latter agreed or promised to sell and deliver to them any prunes, that said plaintiff, as a matter of fact, never did sell and deliver to the defendants any prunes, and that said plaintiff is not the real party in interest in this action (sec. 367, Code Civ. Proc.); that it cannot, therefore, maintain this action, and is not entitled to any judgment of any kind or character against the defendants. Upon this theory of the case, it is manifestly unimportant whether the contract between Eberling and the canners' association constituted a sale or a mere agreement to sell.

The court made no other findings than the following: "1. That the plaintiff did not, on or about September 29, 1913, or on any other date or at any time, sell or deliver to the defendants . . . at Healdsburg . . . or any other place . . . any quantity of prunes; 2. That the defendants . . . did not at any time or place agree or promise to pay to the plaintiff any price for any prunes and that defendants . . . did not at any time or place enter into any contract with the plaintiff for the purchase from plaintiff of any quantity of dried prunes; 3. That the defendants . . . have not paid to the plaintiff the sum of $5,885.56 or any sum of money whatever on account of any dried prunes received by the defendants

. . . from the plaintiff; 4. That there is nothing due from the defendants . . . to the plaintiff on any account.''

Thus it will be observed that, as stated, the whole theory of the case as it was tried by the defendants and decided by the court was that the plaintiff was not the real party in interest, and the sole question here is, therefore, whether the above findings derive sufficient support from the evidence.

We cannot say that the decision was not justified.

The contract upon which this action is founded was, as is above shown, between Eberling Bros. and Sheriffs Bros. The prunes referred to in said contract were those produced or to be produced on the Leak and Gibbons ranches, of which H. W. Eberling, who conducted the negotiations culminating in the contract, was the lessee. In that contract it is expressly provided that the Sheriffs Bros. were to receive, for the prices therein specified, ''*my* crop of Dried French and Sugar prunes grown on what is known as the Leach (Leak) and Givins (Gibbons) ranches.''

Charles Sheriffs testified that, in the course of his negotiations with H. W. Eberling for the purchase of said prunes, no word was ever uttered or suggestion made or intimated that the Pacific Coast Dried Fruit Company had any interest, direct or remote, in said prunes or the contract into which he was about to enter with Eberling Bros. for the purchase of the same. Indeed, he testified that, having heard prior to the time he began negotiations for the purchase of the prunes that the Eberlings had formed a company called the ''Pacific Dried Fruit Company,'' he asked H. W. Eberling, just before the contract was executed, why he did not sell his crop of prunes to his own company (referring to plaintiff), and that Eberling replied that he did not desire to take that course, that the fruit belonged to him (Eberling) and that ''he wanted to sell it on the outside for the best price he could get for it.'' The witness further testified that, when making payments for prunes delivered to him under said contract, he invariably did so by drawing his checks in the name and favor of H. W. Eberling, the latter having requested him to make his checks out in that manner.

On the other hand, the plaintiff presented some testimony which raised an apparent conflict in the evidence upon the question whether it at any time became the owner of the prunes in question or whether said prunes were transferred

to it by Eberling before the making of the contract to which the defendants are parties. H. W. Eberling testified that he transferred his 1913 crop of prunes to the plaintiff prior to the making of the contract between Eberling Bros. and Sheriffs Bros. The consideration for the transfer, he said, was the issuance to him by the plaintiff of three hundred shares of its stock. He never received any cash from the plaintiff for the transfer. The minutes of a meeting of the board of directors of the plaintiff, held July 21, 1913, were introduced in evidence and disclosed that, upon motion of Director C. W. Eberling, "the property of Harry W. Eberling, known as Eberling Bros., viz: 100 tons of prunes, valued at $10,000.00, with the packing house, cannery and other equipment, and cash to the value of $6,000.00, together with his good will, accepted by the company and that the secretary be instructed to issue 336 shares of the company's stock in respect thereof." The foregoing action, the minutes further show, was subsequently ratified by Directors H. W. Eberling, C. W. Eberling, and J. T. Lyons, and acknowledgment of receipt of stock issued by the plaintiff (to whom it does not appear) was also noted in said minutes. There were also introduced what purported to be the minutes of a meeting of the board of directors, held on August 7, 1913, which tended to show that the corporation, by said board, had invested H. W. Eberling with authority "to sell the whole or any part of the prunes that he put into this corporation as one of his assets and which are grown on his ranch at Fulton, Sonoma County, and to receive payment therefor. And, moreover, he is hereby authorized to use such moneys as he may receive in payment therefor in such a way as may seem fit and to the best interests of said corporation in the discharge of its obligations."

The foregoing is, substantially, about all the testimony the object of which was to show ownership of the prunes in the plaintiff.

As stated, there is *apparently* a conflict in the evidence upon the question of the ownership of the prunes involved in this action. Whether, however, in reality, there was a conflict, was a question for the determination of the trial court. If that court concluded, as with perfect propriety we may assume that it did, that the testimony introduced by the plaintiff upon that question was wholly unbelievable, and so entirely discredited and disregarded it, then there was no actual con-

flict, for the situation in that case would be the same as if the plaintiff had introduced no proof whatsoever upon the subject.

That it is within the legal province or discretion of the trial court to reject *in toto* the testimony of any witness is a proposition so obvious under our system and so often confirmed by the courts that its statement is all that should be necessary to certify its soundness. In the very nature of the case this should be the rule. It was announced in the earliest history of the jurisprudence of the state and has never been varied from. In *Blankman* v. *Vallejo,* 15 Cal. 639, 646, the very learned Mr. Justice Baldwin, with the sanction of the court, said: "We do not understand that the credulity of a court must necessarily correspond with the vigor and positiveness with which a witness swears. A court may reject the most positive testimony, though the witness be not discredited by direct testimony impeaching him or contradicting his statements. The inherent improbability of a statement may deny to it all claims to belief." (See, also, *County of Sonoma* v. *Stofen,* 125 Cal. 32, 35, [57 Pac. 681]; *People* v. *Milner,* 122 Cal. 171, 179, 180, [54 Pac. 833]; *Clark* v. *Tulare Lake Dredging Co.,* 14 Cal. App. 414, 432, 433, [112 Pac. 564].)

It is unnecessary to say, of course, that neither a trial court nor a jury may arbitrarily reject the testimony of a witness. There must be a sufficient legal reason for its rejection or discretion is abused. But, unless the action of a trial court or jury in repudiating testimony given before it appears to be inherently erroneous or upon its face as involving an arbitrary disregard of such testimony, an appeal court must assume and, indeed, presume, that upon sufficient reasons the testimony was deemed to be wanting in verity, and, therefore, without probative or evidentiary force or value.

While it does not rest upon this court to search for and develop the specific reason or reasons by which the trial court was led into the rejection of the testimony presented by the plaintiff, we may, nevertheless, properly call attention to some considerations disclosed by the record which, upon their face at least, might well lead to the conviction that the testimony so brought into the case was entitled to no weight or possessed no persuasive force. In the first place, it is to be observed, in this connection, that the prunes in question were shipped to Sheriffs Bros. by and in the name of "Eberling Bros.," and

that, when the fruit was seized by the canners' association under the writ of replevin, H. W. Eberling alone fought the case apparently for and in behalf of himself, and, according to his own admissions on the witness-stand, at no time after the fruit was so taken possession of did he say or represent or pretend in that action or otherwise that the prunes were the property of the plaintiff, until about the time of the commencement of this action. In the second place, it is to be noted that the contract with the canners' association was made prior to the incorporation of the plaintiff and prior to the execution of the contract between Eberling Bros. and the defendants. It will further be noted that the latter contract called for better prices and profits for and on the prunes than H. W. Eberling agreed to sell the prunes at and would have obtained under the contract with the canners' association. Thus it is manifest that it would have been greatly to the financial advantage of H. W. Eberling to have delivered the prunes in question to the Sheriffs Bros. under the latter's contract than to have delivered them to the canners' association under its contract. And it by no means involves a far-fetched proposition to venture, upon the record as it appears here, that the reason which inspired Eberling to attempt to make it appear that the plaintiff and not he was the real party to the contract with the defendants was this: that, if it could be shown that the fruit was *delivered* by the plaintiff to the defendants, under the latter's contract, when said fruit was placed in the cars for shipment at Mark West, the seizure of the prunes by the canners' association, which confessedly had had no dealings with the plaintiff, would involve a matter which concerned no other person than the Sheriffs —that is to say, the fruit having been delivered to them *by the plaintiff* according to their contract, the title thereto had vested in the defendants before the seizure, and that it was, therefore, the latter's duty and no concern of the plaintiff, which was under no obligation of any kind or character to the canners' association, to see that the association restored the fruit to their possession. However that may be, the considerations to which we have above referred, we repeat, are, at least upon their face, sufficient justly to generate distrust in the asseverations of H. W. Eberling that the prunes in question were the property of the plaintiff and in the good faith of the purported transfer of the fruit to said plaintiff

by H. W. Eberling, as the minutes of its board of directors introduced in evidence in this case purport to attest. And if, upon those considerations, the trial court felt constrained to discredit the testimony presented by the plaintiff upon the question of ownership and so disregarded entirely said testimony, we cannot say that the court, in so doing, was not justified or abused its discretion in that respect.

Thus we have reviewed the record as it is presented to us, and, while thus we have been led to the conclusion that the findings of the court that the defendants never at any time had any transaction whatever with the plaintiff and are not indebted to the plaintiff in any sum on account of the prunes in question are amply supported and that said findings support the judgment, it must be conceded that the sole defense relied upon by the defendants, as indicated, and the theory upon which the cause was decided, which theory necessarily followed from the nature of said defense, are extremely technical; for H. W. Eberling was, according to the testimony, practically the corporation plaintiff itself. He organized it and owned all the capital stock thereof, with the exception of a few shares issued for the working purposes of the corporation, and the money, property, and assets transferred to it by him—indeed, the whole of its assets—had constituted his own individual property. If he had made out a clear case of indebtedness to him or the corporation for the prunes in question, we might, under the circumstances thus pointed out, be justified in reversing the judgment. As shown, however, technically, plaintiff was not the owner of the prunes in question according to the court's findings, which are fortified by sufficient evidence, and is, therefore, not the real party in interest in this action; but, more than this, it is very clear from the record that apparently the court could have further found, as certainly it should have found, if the face value of the testimony presented by the defendants may be accepted as the correct test of its probative force, and thus have disposed of the case upon its merits against the plaintiff, that H. W. Eberling did agree in writing to sell the prunes in dispute to the canners' association prior to the incorporation of the plaintiff and prior to the making of the contract with the defendants; that while the prunes were still on a "siding" at the Mark West railway station, H. W. Eberling assured an agent of the canners' association that they were there to be

consigned to that association in pursuance of the terms of its contract with "Eberling Bros."; that the assurance so made to the said agent was false and designed to mislead the canners' association as to the disposition which Eberling really intended to make of the prunes; that, as a matter of fact, he at all times intended to ship them to Sheriffs Bros., to whom he had agreed to sell them at prices in advance of those specified in the contract with the association; that he did consign them to the defendants; that the canners' association, having learned of the duplicity, brought suit to obtain possession of the prunes, did, in fact, secure possession of and retained them, and presumably paid Eberling the prices for them stipulated in its contract; that, as a consequence of the act of the association in taking possession of the prunes, the defendants did not then, nor did they ever, get actual possession of the fruit; that H. W. Eberling treated the action by the association as of his and not as of the concern of the defendants, and, accordingly, himself fought the case for and on behalf of himself; that, on the seventeenth day of December, 1913, almost three months after the association brought its claim and delivery action for the purpose of obtaining possession of the prunes, H. W. Eberling, upon being paid by the defendants the sum of $327.57, executed and delivered to them a receipt therefor acknowledging payment "in full for all fruits delivered by Eberling Bros."; that, at the time of the delivery of said receipt, Eberling said nothing about an indebtedness due him from the defendants on account of the prunes in question, and that he made no claim against the defendants on that account until long after the delivery of said receipt. In view of all these facts, we think it is very clear that justice demands that the judgment, though resting on a technical defense, should be affirmed, and it is so ordered.

Chipman, P. J., and Ellison, J., *pro tem.*, concurred.