[Civ. No. 7015. First Appellate District, Division Two.—November 19, 1930.]

L. F. COWAN, Appellant, v. R. M. HILL et al., Respondents.

Knight, Boland & Christin for Appellant.

Geary & Geary and C. J. Tauzer for Respondents.

BURROUGHS, J., *pro tem.*—This is an action upon a contract alleged in the complaint to have been entered into between the plaintiff and the defendants. The cause was tried by the court with a jury and a verdict in favor of

the defendants was returned. Judgment was entered in accordance with the verdict. The plaintiff appeals.

The appeal is based upon the ground that the jury was not justified in finding for the defendants because the uncontradicted testimony of the plaintiff shows that he accepted the defendants' offer and that therefore the parties were bound by a contract. The offer referred to consisted of a letter written by the defendants to the plaintiff as follows:

> "Petaluma Power & Water Co.
> "144 Main Street,
> "Petaluma, Calif.
> "March 24th, 1927.

"Mr. L. F. Cowan,·
   "155 Montgomery St.,
     "San Francisco, Calif.
"Dear Sir:

"In the matter of our conversation at the office of my brother on the 22nd instant, and your offer, at that time, of par for the Common Stock, the Preferred Stock and the issued bonds of the Petaluma Power and Water Company.

"I have had this matter up with Messrs. Doyle and Maclay, and they refused to accept the aforesaid offer. As a result of our deliberation I am authorized to advise you the lowest figure that will be accepted by the Company for its plant is as follows:

"3000 shares of Common Stock at $115.00......$345,000.00
  100 Bonds at $100........................ 100,000.00
  860 shares of Preferred Stock at $100........ 86,000.00

             "Total..............$531,000.00

"This price will exist only and until the expiration of the option of Mr. Mellersh which expires on March 31st, 1927.

> "Very truly yours,
> "R. M. HILL
> "THOMAS MACLAY
> "FRANK P. DOYLE."

This letter was good as an offer of sale from its date until March 31, 1927. The plaintiff, in answer to a question by his counsel, said: "On March 30th, 1927, about 2 o'clock in the afternoon, I called Mr. Ray Hill . . . at the

office of the Petaluma Power and Water Company, in Petaluma. I was informed that he was at his home at Sebastopol. I then called Mr. Hill at Sebastopol. I told him that I had his letter of March 24th, of 1927, before me, that I accepted his offer as outlined in his communication of March 24th, 1927. I then asked Mr. Hill when he could deliver his securities. Mr. Hill stated it would be necessary for him to consult his associates, which he would do, and call me back that afternoon.''

Upon this subject defendant Ray Hill testified as follows: "Q. With reference to a telephone conversation, or telephone conversations, as of March 30th, 1927, do you recall the substance of the conversation which you had on the telephone with Mr. Cowan on that day? A. No. Q. You do not recall what was said by him or by you? A. I have a faint recollection that he called on the phone wishing to arrange a meeting, which meeting was arranged for and which meeting was held at Petaluma on the first day of April. Q. That is all you remember of the conversation? A. That is all I remember. Q. After the first conversation, did you communicate with your associates, Messrs. Maclay and Doyle? A. I communicated with my associates to arrange a meeting.''

Appellant contends that his testimony that he accepted the offer of March 24, 1927, being uncontradicted, was binding on all parties to the action and could not be arbitrarily rejected by the jury. ■ There can be no question that it is a general rule that uncontradicted evidence cannot be arbitrarily rejected unless the evidence is inherently improbable. An array of authorities are cited to that effect. (*Tillotson* v. *Findley*, 87 Cal. App. 654 [262 Pac. 438]; *Walker* v. *Clark*, 80 Cal. App. 520 [252 Pac. 334]; *Caldwell* v. *Weiner*, (Cal. App.) 258 Pac. 125; *Giannini* v. *Southern Pac. Co.*, 98 Cal. App. 126 [276 Pac. 618]; *Hayward* v. *Rogers*, 62 Cal. 348.) The foregoing cases support the general rule above cited, but *Caldwell* v. *Weiner*, (Cal. App.) 258 Pac. 125, was decided in the District Court of Appeal. It contains language which seems to support the views of appellant. The cause was, however, taken over by the Supreme Court and in the opinion of that court, reported at 203 Cal. 543 [264 Pac. 1100, 1101], it is said:

"It would seem that this case, with all the circumstances appearing in the record, comes within the rule of *Blanc* v. *Connor,* 167 Cal. 719 [141 Pac. 217], and *Davis* v. *Judson,* 159 Cal. 121 [113 Pac. 147], to the effect that while it is a general rule that the uncontradicted testimony of a witness to a particular fact may not be disregarded, but should be accepted by the court as proof of the fact, this rule has its exceptions, and the most positive testimony may be contradicted by the circumstances in evidence in connection with the matter which satisfy the court of its falsity and the manner of the witness in testifying may impress the court with a doubt as to the accuracy of his statement and influence it to disregard his positive testimony as to a particular fact."

In *Davis* v. *Judson,* 159 Cal. 121, at 128 [113 Pac. 147, 150], it is held: "The most positive testimony of a witness may be contradicted by inherent improbabilities as to its accuracy contained in the witness' own statement of the transaction; or there may be circumstances in evidence in connection with the matter, which satisfy the court of its falsity; the manner of the witness in testifying may impress the court with a doubt as to the accuracy of his statement and influence it to disregard his positive testimony as to a particular fact; and as it is within the province of the trial court to determine what credit and weight shall be given to the testimony of any witness, this court cannot control the finding or conclusion denying the testimony credence, unless it appears that there are no matters or circumstances which at all impair its accuracy." (*Dierks* v. *Newson,* 49 Cal. App. 789 [194 Pac. 518]; *Quock Ting* v. *United States,* 140 U..S. 417 [35 L. Ed. 501, 11 Sup. Ct. Rep. 733, 851, see, also, Rose's U. S. Notes]; *Pacific Coast etc. Fruit Co.* v. *Sheriffs,* 31 Cal. App. 136 [159 Pac. 986]; sec. 1847, Code Civ. Proc.) Other cases in point could be cited but we deem the foregoing cases establish the rule that the uncontradicted testimony of a witness may not be rejected by the court unless it is inherently improbable. The question as to what circumstances render the testimony of a witness subject to rejection rests primarily with the trial court or jury who heard the witness, noted his demeanor on the witness-stand, heard all of the other testimony and was

thus in a better position to pass upon the testimony and its weight and its sufficiency. In the light of this rule we will now examine the evidence to ascertain if the statement of plaintiff to the effect that in the conversation held on March 30, 1927, with R. M. Hill he told the latter he accepted his offer contained in the letter of March 24, 1927, is of such a nature that there are no matters or circumstances which at all impair its accuracy.

It is claimed by the respondents that the testimony of the plaintiff is inherently improbable and therefore the court had the power to reject such testimony. D. B. Hill testified that he saw the plaintiff at a meeting about 10 or 10:30 A. M. April 1, 1927. There were present at said meeting Messrs. Cowan, Doyle, Maclay, R. M. Hill, Geary and the witness. During that meeting Mr. Cowan wanted to buy the common stock of the corporation for $100 a share. Mr. Cowan and the witness had quite an argument, and he did quite a bit of figuring with Cowan to show that the common stock was worth $115 per share. Mr. Cowan further testified that he had no knowledge that the defendants did not have all the stock in the company until the meeting at Petaluma on April 1, 1927. The testimony of Dolph B. Hill is to the effect that on February 12th and 14th he told Mr. Cowan that they did not own all the stock, but that they did own the control with the interest of their friends. Mr. T. C. Mellersh testified that at the meeting of February, 1927, he was present, and that Hill told Cowan that among them they had control of the company. Thomas Maclay testified to the same effect as the last witness. There was also a letter dated February 28, 1927, written by Mr. Cowan to defendant R. M. Hill, making an offer of purchase of the stock of the company in which it is said, "You will give notice immediately to all of your stockholders of the effect of this agreement". Mr. Cowan also testified that the first time he ever heard that he would be required to put up a cash payment of $50,000 was when it was put in the substituted contract sent to his office; that the subject was never mentioned at the meeting of April 1, 1927. That such conversation did take place at the meeting above named is testified to by Dolph B. Hill and Thomas Maclay. According to the testimony of D. B. Hill during

the meeting of April 1, 1927, Cowan wanted to buy the common stock for $100. The company had on hand a surplus of some $33,000 on April 1, 1927. Cowan said the subject of this surplus was not discussed. Other witnesses say that it was the subject matter of discussion and that he was advised that it would not be considered in the trade. Witness D. B. Hill testified that to his knowledge Cowan had never accepted the offer of $115 for the common stock. The most he ever offered was $100. Mr. Maclay testified that at this meeting of April 1, 1927, Cowan argued that the stock was worth only $100 while Hill was trying to convince him it was worth $115. Cowan did not recall stating at the meeting of April 1, 1927, that on March 31, 1927, if he had sent a telegram that he had written on March 31, 1927, the defendants would have been bound by their letter of March 24, 1927. That he did so state is testified to by D. B. Hill and Thomas Maclay.

From the foregoing it is clear that on material matters the plaintiff has been· contradicted. It is also clear that on April 1, 1927, two days after the telephone conversation in which plaintiff testified he accepted the offer to sell made on March 24, 1927, plaintiff and the defendants were engaged in a controversy over the price of the common stock, also over the disposition of the surplus funds. These points might be said to render the testimony of Cowan inherently improbable, when taken in connection with his statement that he closed the contract on March 30th, in accordance with the offer of $115 per share for the stock with no agreement as to the surplus funds on hand. We are of the opinion that it was peculiarly within the province of the jury to determine the weight to be given to all the testimony. They were instructed that "In determining the credibility of witnesses, the weight and sufficiency of their evidence, you should observe the appearance of the witness upon the stand; the character and manner of testifying; the bias or prejudice, if any appears; their interest or absence of interest in the outcome of the case; their memory or recollection, whether good or bad, clear or indistinct; their opportunity of knowing the facts concerning which they testify; their intelligence; ability to express themselves; their frankness or absence of the same, and any other trait

exhibited by the witness which will enable you to properly weigh and consider their evidence with a view of ascertaining and rendering a true and a just verdict.''

We deem it unnecessary to detail the evidence any further or to cite any additional authorities.

The judgment is affirmed.

Nourse, P. J., and Sturtevant, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on December 19, 1930, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 12, 1931.