[Civ. No. 16814. Second Dist. Div. One. Dec. 28, 1949.]

DANIEL HALLORAN et al., Respondents, v. GEORGE VICTOR ISAACSON et al., Appellants.

Sturzenacker & Isenberg, Carl B. Sturzenacker and Albert E. Isenberg for Appellants.

Eberhard & Zeigler and Caroline R. Kellogg for Respondents.

WHITE, P. J.—Peggy Halloran Isaacson (hereinafter sometimes referred to as Peggy Halloran) died intestate April 26, 1944, leaving surviving her husband, George V. Isaacson, one of the appellants herein, her parents, Mr. and Mrs. Daniel Halloran, and her sister, Louise Halloran Bravender. At the time of her death a parcel of real property, hereinafter referred to as the "Alexandria Street Property," stood in the name of the decedent, title thereto having been taken by deed to "Peggy Halloran" in March, 1942. In April, 1942, there was executed, delivered and recorded a deed of the property from George V. Isaacson to "Peggy Halloran, wife of grantor, as her sole and separate property." In the probate of the estate of his wife, appellant Isaacson acted as administrator. A decree of distribution was entered distributing the Alexandria Street property to appellant Isaacson as community property of him and his deceased wife. Thereafter the present action was commenced by the parents and sister of decedent wife, seeking among other things to have it declared that the property in question was the separate property of decedent and to impress a trust upon one-half thereof in favor of the plaintiffs. The trial court, hearing the cause without a jury, found that the property was decedent's separate property at the time of her death and adjudged that the husband held an undivided one-half interest in trust for the parents of decedent and should execute a deed conveying such interest to the parents, and further adjudged that the one-half interest held by the husband was "subject to the right of plaintiffs Agnes B. Halloran and Daniel Halloran to live in said premises and make their homes therein so long as said Agnes B. Halloran or Daniel Halloran shall continue to live; that said defendant is also entitled to make his home therein."

Appellants contend (1) "That the court erred in granting plaintiffs Halloran a life estate which was not supported by the evidence"; (2) "The court erred in its decision in finding the property to be separate property of deceased by reason of the deceased's husband giving her a deed"; (3) "The court erred in attempting to set aside a probate court order on the grounds of extrinsic fraud." The two last contentions will be considered first.

Appellants' argument under point (2) is, in effect, that the evidence is insufficient to support the finding that the

property in question became the separate property of decedent by virtue of the deed to her from her husband in April, 1942. Appellants in their brief refer to testimony given by several persons who were present at the time the deed from Mr. Isaacson to his wife was drawn and executed, which testimony, in substance was to the effect that it was the expressed intent of both grantor and grantee merely ''to show that Peggy Halloran was the owner of record in case (Mr. Isaacson) should get into business.'' As stated by one witness, Peggy Halloran said, ''It is just putting the title of the property in my name if George goes into business or bids on some of these contracts he is always talking about. . . . George, I am your lawyer as well as your wife. You know this is the way we handle our property. . . . Well, in case anything did happen to me, why everybody here knows the circumstances of this deed being made. After all, we have to protect this property because it is this property that is going to keep us in our old age.'' Another witness testified that Peggy Halloran said that the property had to be handled that way in order to protect ''George'' from his own ''financial faults.'' Emphasis is also placed on the deliberate omission to include in the deed a clause, assertedly required by title companies, to the effect that title by agreement of the parties was vested absolutely in the grantee as her sole and separate property. The witnesses also testified, in effect, that Peggy Halloran stated on this occasion, ''This is our community property.''

The authorities cited do not support the position of appellants, which amounts to no more than a contention that the trial court was bound to find in accordance with the testimony of Mr. Isaacson, and other witnesses that although the property was placed in his wife's name it was their intent to treat it as community property and that he did not intend to make a gift. The cases of *Tomaier* v. *Tomaier,* 23 Cal.2d 754 [146 P.2d 905]; *Stephenson* v. *Brand,* 122 Cal.App. 543 [10 P.2d 476]; *Henry* v. *Hibernia Savings & Loan,* 5 Cal.App. 2d 141 [42 P.2d 395]; and *Estate of Helm,* 6 Cal.App.2d 752 [45 P.2d 250]; and *Wilson* v. *United States,* 100 F.2d 552, cited by appellants, stand simply for the rule, as also set forth in the cases hereinafter referred to, in substance, that property may be shown to be community regardless of the manner in which it was held—that it may be shown that it was acquired with community funds, and that the presumption, arising under section 164 of the Civil Code and the authorities construing it, that property placed in the wife's name although

acquired with community funds is her separate property and a gift from the husband, may be rebutted by testimony of the husband that he did not intend such a gift or that the parties had agreed that the property should remain community regardless of the manner in which it was held. But the trial court was not required to find in accordance with the testimony of any particular witness or any number of witnesses any more than it was required to find in accordance with the presumption. The language in *Chamberlain* v. *Chamberlain,* 2 Cal. App.2d 684, 687 [38 P.2d 790], quoted with approval in *Wilson* v. *United States, supra,* relied upon by appellants, is here pertinent:

"Appellant's testimony was introduced to rebut the legal effect of the documentary evidence produced by plaintiff. However, the trial court was not obliged to accept the explanation offered by appellant and to decide that it overcame the legal effect of the deeds and of the agreement for the sale of the property. Respondent's documentary evidence created a presumption that the legal title to the property was in respondent and appellant as joint tenants in accordance with the plain language of the deeds. Appellant sought to overcome this presumption by the testimony which he himself offered. *It remained for the trier of facts to decide whether the proof offered by appellant was sufficient to overcome the presumption. . . .* "It is obvious that the principle which is here applicable is the very common principle which requires that a finding of a trial court attacked for lack of evidentiary support must be upheld if the evidence respecting the facts specified in the finding is conflicting. . . ." (Emphasis added.)

As pointed out in respondents' brief, the deed from Mr. Isaacson to his wife, in her maiden name, "as her sole and separate property" established a presumption under Civil Code, section 164, that the property was her separate property. That presumption was itself evidence, and it was for the trial court to determine whether the evidence offered to overthrow the presumption had sufficient weight to effect that purpose. (*Pabst* v. *Shearer,* 172 Cal. 239, 242 [156 P. 466].) "A presumption is evidence and is sufficient to support a verdict of a jury or a finding of the court, unless overcome by satisfactory evidence." (*Steward* v. *Paige,* 90 Cal.App.2d 820, 824 [203 P.2d 858].) "It is only where the presumption is not controverted that the court is bound to follow it. Whether or not it is so controverted is a question of fact for the trial court, and the conclusion of that tribunal is conclusive on an

appellate court, unless it is manifestly without sufficient support in the evidence.'' (*Stephenson* v. *Brand, supra,* 122 Cal. App. 543.)

As heretofore stated, the authorities simply hold that where title is taken in the name of the wife, the testimony of the husband that he did not intend to make a gift of his separate property or of his interest in the community is sufficient, *if believed by the court,* to overcome the presumption declared by section 164 of the Civil Code. (*Whitaker* v. *Whitaker,* 137 Cal.App. 396, 399 [30 P.2d 538].)

The argument that the court was bound to accept the testimony of the husband and his witnesses is answered by a quotation from the case just cited: ''The rule that the uncontradicted testimony of a witness cannot be disregarded is subject to the limitation that the trial court or jury may discard such testimony when the surrounding circumstances of the case afford probable justification for such action. . . . 'Unless the action of a trial court or jury in repudiating testimony given before it appears to be inherently erroneous or upon its face as involving an arbitrary disregard of such testimony, an appeal court must assume and, indeed, presume, that upon sufficient reasons the testimony was deemed to be wanting in verity, and, therefore, without probative or evidentiary force or value.' (*Pacific Coast etc. Fruit Co.* v. *Sheriffs,* 31 Cal.App. 131, 137 [159 P. 986].)

''The fact that the witness who gave the uncontradicted testimony is directly interested in the outcome of the litigation is a circumstance important in weighing the testimony given.''

(See, also, *Barham* v. *Khoury,* 78 Cal.App.2d 204 [177 P.2d 579], and *Broderick* v. *Koehler,* 92 Cal.App.2d 813 [207 P.2d 1070].)

In the present case appellants' witnesses were interested in the outcome. The appellant was endeavoring to overcome a presumption, arising from the deed from him to his wife, that the property was the separate property of his wife. The presumption, although disputable, was itself evidence, and it was for the trial court to say whether the evidence offered to overthrow it had, under all the surrounding facts and circumstances, sufficient weight for that purpose (*Pabst* v. *Shearer, supra*). Not only was the property taken in the wife's name when it was acquired, but this action was followed by a deed from the husband to the wife ''as her sole and separate property.'' Part of the purchase price was represented by a deed of trust executed by the wife alone. The burden

was upon the husband to overcome the presumption. (*Hogevoll v. Hogevoll,* 59 Cal.App.2d 188, 196 [138 P.2d 693] ; *Estate of Walsh,* 66 Cal.App.2d 704, 707 [152 P.2d 750].)

No citation of authority is necessary in support of the established rule that the power of this court, when a finding is attacked as unsupported by the evidence, begins and ends with a determination whether there is any substantial evidence to support the conclusion of the trier of fact. That such substantial evidence exists in the case at bar is manifest. Therefore the finding of the trial court that the property was the separate property of Peggy Halloran Isaacson at the time of her death cannot be disturbed.

Appellants' next contention, that there was no extrinsic fraud in securing the decree of distribution, is without merit. Appellant Isaacson represented to the probate court that the property was community. He secured the signatures of Mr. and Mrs. Halloran to a statement acknowledging that the property was community and consenting to its distribution to the surviving husband, and presented it to the probate court to be acted upon. The trial court's findings in this connection are as follows: That Mr. and Mrs. Halloran were aged and enfeebled and in a declining state of health, and in such physical and mental condition as to render them "susceptible to artful and designing persons"; that they were without experience in legal matters, leaving all such matters to their daughter, Peggy Halloran, who was an active and practicing attorney; that they had no knowledge of the deed from Mr. Isaacson to Peggy Halloran until after the commencement of this action. The court further found:

"That at numerous times and on numerous occasions after his marriage to said Peggy Halloran Isaacson, defendant George Victor Isaacson represented to plaintiffs that he had great admiration, respect and affection toward plaintiffs Daniel Halloran and Agnes B. Halloran, and that he had assumed and always would assume a responsibility for the welfare of plaintiffs Daniel Halloran and Agnes B. Halloran, as a loving son ; that prior to August 23, 1945, he had shown an honorable, honest and sympathetic nature to plaintiffs ; that said defendant stated to plaintiffs that he would act as administrator of the estate of said Peggy Halloran Isaacson and that he would employ Cecil Betz Davis, an attorney, to act as attorney for the estate and to conduct the probate proceedings, and that he would employ said Cecil Betz Davis to represent plaintiff Agnes

B. Halloran in proceedings to terminate the joint tenancy of said plaintiff Agnes B. Halloran and said Peggy Halloran Isaacson in certain real property located at 6201 West Fifth Street, Los Angeles; that plaintiff believed all of said representations of defendant and relied upon them; that by reason of the relationship between plaintiffs and defendant, defendant occupied a confidential relationship toward plaintiffs, and that plaintiffs trusted defendant and believed all of such statements and representations of said defendant to be true and relied upon said defendant to protect their interests, and by reason of these facts did not consult counsel to look after their interests and made no investigation of the condition of said estate until about the month of May, 1946.

"That on or about August 23, 1945, while plaintiffs Louise Halloran Bravender and Harold R. Bravender were away from the City of Los Angeles, defendant George Victor Isaacson came to plaintiffs Daniel Halloran and Agnes B. Halloran in the home at 500 South Alexandria Street in said City, which plaintiffs and defendant were then occupying as their joint home, and presented to said plaintiffs Daniel Halloran and Agnes B. Halloran a document, and stated to them that said document had to be signed in the probate proceedings in the estate of Peggy Halloran Isaacson; that defendant represented to plaintiff Agnes B. Halloran that said document would not change anything and that the facts therein stated were true; that plaintiffs Daniel Halloran and Agnes B. Halloran signed said document without reading it; that plaintiffs believed such representations to be true and believed that said document would not change nor affect the condition of the title to the premises hereinabove described and relied upon such representations and trusted defendant, and by reason of such belief and reliance on said representations signed said document, on said August 23, 1945; that all of said representations were false and that defendant knew at the time of making said representations that they were false; that defendant made said representations with the intent that they should be relied upon . . . ; that said document stated that said property . . . was the community property of Peggy Halloran Isaacson, also known as Peggy Halloran, deceased, and George Victor Isaacson, her husband; that said statement is, and was untrue, . . . defendant George Victor Isaacson knew that said statement was untrue.

"That said document, together with the First and Final Account and Petition for Distribution of said estate, was filed

by said defendant George Victor Isaacson in said probate proceeding . . . and a decree made distributing said real property . . . to said defendant . . . ."

"That . . . said property . . . was the separate property of said Peggy Halloran Isaacson; that the Decree of Distribution entered in said Estate . . . was based upon and entered by reason of said false statement . . . that the Decree of Distribution based upon said statement was procured by defendant and was made and entered wholly as the result of extrinsic fraud practiced by said defendant upon said plaintiffs and upon the court . . . ."

It further appears that a little over six months after the entry of the decree of distribution, appellant Isaacson caused to be served on respondents a notice purporting to terminate an alleged tenancy at will of plaintiffs in the real property and thereafter commenced an action in unlawful detainer seeking their eviction.

Appellants' argument on the evidence amounts to no more than a claim that the trial court drew erroneous inferences from the testimony. Viewing the evidence, however, as we must, in the light most favorable to the prevailing parties, we find evidence to support the conclusion that by concealment and misrepresentation defendant Isaacson misled the probate court; lulled the plaintiffs into security and effectively prevented them from protecting their interests in the estate of their daughter. He concealed from the parents the fact that he had deeded the property to the daughter and represented that the document they were signing "would not change anything." His relationship with them was one of trust and confidence.

Among the cases relied on by appellant is *Bacon* v. *Bacon*, 150 Cal. 477 [89 P. 317]. It is there said, at page 490:

"The general rule as to what constitutes extrinsic fraud or mistake is clearly stated by the United States supreme court in *United States* v. *Throckmorton*, 98 U.S. 61, 65 [25 L.Ed. 93]. After stating the general rule that a bill in equity will not lie to set aside a judgment obtained by means of perjured testimony or forged documents, introduced in evidence in support of a contested issue of fact, that court says: 'But there is an admitted exception to this general rule, in cases where, by reason of something done by the successful party to the suit, there was, in fact, *no adversary trial or decision of the issue in the case*. Where the unsuccessful party has been

*prevented from exhibiting fully his case,* by fraud or deception practiced upon him by his opponent, as by keeping him away from court; . . . these, and *similar cases which show that there never has been a real contest at the trial or hearing of the case,* are reasons for which a new suit may be sustained to set aside the former judgment or decree and open the case for a new and fair hearing.' (The italics are ours.)''

Certainly the facts as found by the court come within the rules above set forth. There was here no adversary trial or decision because the Hallorans, relying upon appellant Isaacson to take care of matters for them, were prevented from exhibiting fully their case before the probate court. The essence of the matter is that because of the relationship of trust and confidence between the parties, appellant Isaacson was able, through misrepresentation and concealment, to secure a decree vesting sole title in him.

Appellants' arguments throughout their briefs, as heretofore noted, amount to no more than a contention that the trial court drew erroneous inferences and that this court should accept appellants' interpretation of the evidence. Under the rule hereinbefore referred to governing the power of an appellate court where the evidence is in conflict, it is established law that when two or more inferences can reasonably be deduced from the facts, a reviewing court is not authorized to substitute its deductions for those of the trier of fact. This rule is applicable when it is sought by testimony to overcome a presumption. (*Thompson* v. *Davis,* 172 Cal. 491, 493 [157 P. 595]; *Smellie* v. *Southern Pacific Co.,* 212 Cal. 540, 549 [299 P. 529]; *Lieber* v. *Rigby,* 34 Cal.App.2d 582, 584 [94 P.2d 49].)

Appellants' contention "that the life estate given to plaintiffs, Daniel Halloran and Agnes B. Halloran, was not supported by any testimony" is likewise based upon their own interpretation of the evidence before the trial court. It was found, in substance, that after the death of his wife, appellant told respondents that he was in a state of profound grief and could find relief only by being in the presence and company of respondents; that he owed a great debt to his deceased wife because of the comfort, happiness and assistance she had given him and that the only way he could repay this debt was by aiding her family, respondents herein, as Peggy Halloran had intended doing had she lived; that she had planned and intended to have respondents sell their own home and come to live with her and appellant in the Alexandria

Street house and make their home there permanently; that the Alexandria Street property would be in probate proceedings for many months during which time it could not be sold, while the Hallorans' property could be sold; that appellant advised said respondents to sell their property and move into the Alexandria Street property and make their home with him, and represented that if they would do so they could continue to live there during the lives of respondents Daniel and Agnes B. Halloran and Louise Halloran Bravender (their daughter), or any of them. There was testimony that appellant further represented to respondents that it would be difficult for him to meet the expenses of maintaining the Alexandria Street property alone and that he would need the financial assistance and personal help of respondents to keep the property and maintain it as a home and that appellant and respondents would use the Alexandria Street property as their home throughout the lifetime of respondents, other than Harold Bravender. That respondents believed such representations and in reliance thereon sold their property and moved into the Alexandria Street property and at all times since have performed their obligations with respect thereto.

Appellant urges that when "they (the Hallorans) ceased making a home for the defendant, as appears from the testimony, the tenancy ceased and a 30-day notice of termination of that tenancy was in order." The testimony which the court believed, however, was the testimony that Hallorans did not cease making a home, but that appellant voluntarily absented himself therefrom most of the time. ■ The case cited by appellant, *Bekins* v. *Smith,* 37 Cal.App. 222 [174 P. 96], to the effect that a life estate created orally and based on a condition terminates when the condition is breached, is also authority for the statement that an oral transfer of an estate in land may be made effectual by taking possession of and performance by the grantee of acts in reliance on the grant. This is precisely the situation presented in the instant case. The argument that the Hallorans failed to live up to their end of the bargain is answered by the fact that upon conflicting evidence the court found against appellants' contentions.

The judgment is affirmed.

Doran, J., and Drapeau, J., concurred.