MARY HELEN GRYMES, Respondent, *v.* ROBERT S. HONE, Executor, etc., Appellant.

To constitute a valid gift *mortis causa*, three things are necessary: 1st. It must be made with a view to the donor's death. 2d. The donor must die of that ailment or peril. 3d. There must be a delivery. It is not necessary that there should be an express qualification in the transfer or the delivery; it may be found to be such a gift from the attending circumstances, although the transfer or the delivery be absolute.

Defendant's testator being the owner of 120 shares of bank stock, included in one certificate, made an absolute assignment in writing of twenty shares to the plaintiff. This he handed to his wife, to be kept by her and delivered to the plaintiff upon his death. At the time of executing the assignment the donor was about eighty years of age, in failing health, and so continued until his death, which occurred about five months thereafter. *Held,* this was a valid gift *mortis causa;* that the equitable title to the stock passed by the assignment; that defendant was trustee for plaintiff, by operation of law, to make the gift effectual, and that a judgment requiring him to produce the certificate and cause a transfer of the twenty shares to be made to plaintiff, was proper.

(Argued February 26, 1872; decided March 26, 1872.)

APPEAL from judgment of the General Term of the Supreme Court in the third judicial department, affirming a

judgment in favor of plaintiff, entered upon the report of a referee.

The action is brought to recover twenty shares of the stock of the Bank of Commerce of the city of New York, or its value, claimed by plaintiff as a gift *mortis causa* by Federal Vanderburgh, defendant's testator. The facts sufficiently appear in the opinion. The referee directed judgment that defendant, as executor, permit the transfer of the twenty shares of stock on the books of the bank, and, for that purpose, surrender the certificate; that he account for dividends received after the testator's death, and in case the stock was sold that he pay its value out of the estate. Judgment was entered accordingly.

*John H. Reynolds* for the appellant. The facts do not constitute a valid gift *causa mortis.* (1 Story's Eq., § 607 *a*; 2 Redfield on Wills, 299, 300, 302; *Weston* v. *Hight,* 5 Shep., 287; 3 McN. & G., 664; *Duffield* v. *Elwes,* 1 Bligh, N. S., 533; *Wells* v. *Tucker,* 3 Binney, 366; *Irish* v. *Nutting,* 47 Bar., 370; *Decheimer* v. *Gautier,* 5 Robt., 223; *Edwards* v. *Jonès,* 1 Mylne & Craig, 226; 1 White & Tudor's Lead. Cases, 837; May on Vol. Alienations, 381 to 400; *Harris* v. *Clark,* 8 N. Y., 93, 121; 2 Kent's Com., 438; *Fargrearson* v. *Case,* 2 Coll., 356; 38 Barb., 530; 34 N. Y., 80; *Ward* v. *Turner,* 2 Vesey, Jr., 431; *Pennington* v. *Gettings,* 2 Gill & Johns., 208; *Ellison* v. *Ellison,* 6 Vesey, 602; 1 Story's Eq., 433, note; 1 Vesey, Jr., 50; 18 Vesey, 91, 93, 99; *Fortiscue* v. *Burnett,* 3 Mylne & Keen., 36; *Edwards* v. *Jones,* 1 Mylne & C., 237; *Antrobus* v. *Smith,* 12 Vesey, 39; *Lambert* v. *Overton,* 13 W., 227; *Jones* v. *Locke,* 1 Ch. Appeals, 25; *Dillon* v. *Coppin,* 4 Mylne & Craig, 647; *Searles* v. *Law,* 15 Simons, 95; *Woodford* v. *Chamley,* 28 Beavan, 96; *Penfield* v. *Madd,* 4 Eq. Cases, 562; *Summer* v. *Danby,* 25 Jurist, N. S., Part 1, p. 426; see also *Coningham* v. *Plunnett,* 2 Young & Coll. C. C., 245; *Price* v. *Price,* 14 Beavan, 598; *Scales* v. *Mande,* 6 De Gex, McN. & G., 43; *Weale* v. *Ollin,* 17 Beavan, 252; *Peckham* v.

*Taylor*, 31 id., 250; *Lambert* v. *Overton*, 13 W. Reporter, 227.)

*Orlando Meads* for the respondent.   There was a good and valid gift *mortis causa*.  (2 Kent's Com., 444; *Meridith* v. *Watson*, 23 Eng. L. & E., 250; *Irish* v. *Nutting*, 47 Bar., 370; *Morgan* v. *Malleson*, 10 Eq. Cases, 475; 38 Barb., 530; 34 N. Y., 80; 13 id., 626; *Ex parte Pye*, 18 Vesey, 140; *Roberts* v. *Roberts*, 11 Jurist, 993; *Richardson* v. *Richardson*, 3 Eq. Cases, 690; *Kekewich* v. *Manning*, 1 D., M. & G., 176; *Kiddell* v. *Farnell*, 2 Jurist, N. S., 786; 2 Fisher's Digest, 419; *Duffield* v. *Elwes*, 1 Bligh, 529; *Hathaway* v. *Payne*, 34 N. Y., 106; *Walsh* v. *Sexton*, 55 Bar., 257; *Westerlo* v. *De Witt*, 36 N. Y., 340; *Drury* v. *Smith*, 1 Peere Williams, 404; *Sessions* v. *Moseby*, 4 Cush., 87; *Foster* v. *Mansfield*, 3 Met., 412; *Hunter* v. *Hunter*, 19 Barb., 631; *Fulton* v. *Fulton*, 48 Bar., 582; *Bedell* v. *Carll*, 33 N. Y., 584.)

PECKHAM, J.   On the 19th August, 1867, the alleged donor being the owner of 120 shares of stock, included in one certificate, in the Bank of Commerce of New York city, made an absolute assignment in writing, transferable on the books of the bank on the surrender of the certificate, under seal and witnessed, of twenty shares thereof to this plaintiff, his favorite granddaughter, for value received, as the assignment purports, and appointed her his attorney irrevocable to sell and transfer the same to her use.   After this paper had been signed, " he kept it by him for awhile " (how long, nowhere appears), and afterward handed it to his wife to put with the will and other papers in a tin box she had.   When he gave to his wife the paper so drawn, he said: " I intend this for Nelly.   If I die, don't give this to the executors; it isn't for them, but for Nelly; give it to her, herself."   She asked, " why not give it to her now ? "   "Well," he said, " better keep it for the present; I don't know how much longer I may last or what may happen, or whether we may not need it."   This is the statement,

as given by the widow of donor.   It was admitted that, at the time of executing said instrument, the donor was from seventy-eight to eighty years of age, was in failing health, and so continued till his death, January 23d, 1868.   Upon these facts was there a valid gift *mortis causa ?*

Upon the question as to what constitutes such a gift, the authorities are infinite, not always consistent.   But at this time it is generally agreed that, to constitute such a gift, it must be made with a view to the donor's death from present illness or from external and apprehended peril.   It is not necessary that the donor should be *in extremis*, but he should die of that ailment.   If he recover from the illness or survive the peril, the gift thereby becomes void; and until death it is subject to his personal revocation.   (2 Kent, 444, and cases cited ; 2 Redfield on Wills, 299 *et seq. ;* 1 Story's Eq., § 606, etc., notes and authorities.)

In the next place there must be a delivery of it to the donee or to some person for him, and the gift becomes perfected by the death of the donor.

Three things are necessary.   1. It must be made with a view to donor's death.   2. The donor must die of that ailment or peril.   3. There must be a delivery.   The appellant insists that the gift in this case fulfills neither requisition.

Was this gift made with a view to the donor's death ?   It is so found by the referee as a question of fact.   What the witness intended to convey by the term "failing health" is not clear ; but intendments are against the appellant where the fact is left uncertain.   There is nothing in the case inconsistent with the idea that the testator, when he signed this assignment, was confined to his bed, and so continued till his death ; though I do not wish to be understood as saying that such confinement was necessary to validate the gift.   It seems that he died, as the referee finds, from this failing health, in five months thereafter ; so that the terms, as used, indicated a very serious ailment.

True, he did not, and of course could not, know when death would occur when he executed this assignment, but he was in

apprehension of it. His age and his "failing" told him death was near, but when it might occur he had no clear conviction. An ailment at such an age is extremely admonitory.

From these facts, can this court say, as matter of law, that this testator was not so seriously ill when he executed this assignment as to be apprehensive of death; that he was not legally acting "in view" of death; that he was not so ill as to be permitted to make this sort of gift? True, the donor died five months thereafter; but we are referred to no case or principle that limits the time within which the donor must die to make such a gift valid. The only rule is that he must not recover from that illness. If he do, the gift is avoided. The authorities cited by the appellant's counsel, of *Weston* v. *Hight* (5 Shep. Me., 287), and *Staniland* v. *Willott* (3 McN. & Gor. Ch. R., 664), are both instances of recovery, and the gifts, on that ground, declared void. In the latter the donor and his committee recovered back the stocks given, because of his recovery. The first case is improperly quoted in 2 Red., 300, note 11, as not originally authorizing the gift.

The declaration of the donor, that his wife should keep the assignment and not hand it over till after his death, as he did not know what might happen, nor but that they might need it, was simply a statement of the law, as to such a gift, whether the declaration was or was not made. Clearly he could not tell whether he should die or recover from that ailment. If he did recover, the law holds the gift void.

The transaction as to such a gift is, the donor says, I am ill, and fear I shall die of this illness; wherefore I wish you to take these things and hand them to my granddaughter after my death; but do not hand them to her now, as I may recover and need them. A good *donatio mortis causa* always implies all this. If delivered absolutely to the donee in person, the law holds it void in case the donor recovers, and he may then reclaim it. (*Staniland* v. *Willott, supra.*)

To make a valid gift *mortis causa*, it is not necessary that there should be any express qualification in the transfer or the delivery. It may be found to be such a gift from the attend-

ing circumstances, though the written transfer and the delivery may be absolute. See the last case.

I think this donor made this gift "with a view to his death," within the meaning of the rule on that subject.

2d. This also settles the second requisite, as it is admitted that he did not recover, but died of this "failing health," as it is expressed.

3d. Was there a delivery? The assignment was delivered to his wife for the donee. She thus became the agent of the donor. So far as the mere delivery is concerned, this is sufficient. (See the elementary writers before cited; also *Drury v. Smith,* 1 P. W., 404; *Sessions* v. *Moseley,* 4 Cush., 87; *Coutant* v. *Schuyler,* 1 Paige, 316; *Borneman* v. *Sidlinger,* 8 Shep., Me. 185; *Wells* v. *Tucker,* 3 Binn., 366; *Hunter* v. *Hunter,* 19 Barb., 631.) Such a delivery to be given to the grantee after the grantor's death, is good as to a deed of real estate. (*Hathaway* v. *Payne,* 34 N. Y., 92.)

It is urged that this gift was not completed; that the stock was not transferred on the books of the bank, and could not be until the certificate held by the donor was surrendered, and that equity will not aid volunteers to perfect an imperfect gift.

Within the modern authorities this gift was valid, notwithstanding these objections. The donor, by this assignment and power, parted with all his interest in the stock assigned as between him and the donee, and the donee became the equitable owner thereof as against every person but a *bona fide* purchaser without notice. Delivery of the stock certificate without a transfer on the bank's books would have made no more than an equitable title as against the bank (*N. Y. and N. H. R. R. Co.* v. *Schuyler,* 34 N. Y., 80, and cases cited), though it would give a legal title as against the assignor. (*McNeil* v. *Tenth Nat. Bank* (46 N. Y., 325), just decided, and according to the case of *Duffield* v. *Elwes,* 1 Bligh., N. S., 497, 530, decided in the house of lords). The representatives of the donor were trustees for the donee by operation of law to make the gift effectual. (See also to the same effect *Ex parte Pye,*

18 Ves., 140; *Kekewich* v. *Manning*, 1 De G., M. & G., 176; *Richardson* v. *Richardson*, 3 Eq. Ca., 686.) This trust, like this species of gift, is peculiar. The trust, like the gift, is revocable during the donor's life, and is perfected and irrevocable by his death.

This extended the law as laid down by Lord HARDWICKE, in *Ward* v. *Turner* (2 Ves., Sr., 431, 442), upon this subject, and our courts have gone in the same direction with *Duffield* v. *Elwes*. Where notes payable to the donor's order and not indorsed, and other things of similar character, have been given *mortis causa*, courts compel the representatives of the donor to allow the donee to sue in their name, though the legal title has not passed. (See last case; *Grover* v. *Grover*, 24 Pick., 261; *Chase* v. *Redding*, 13 Gray, 418; *Bates* v. *Kempton*, 7 id., 382; and see also *Westerlo* v. *De Witt*, 36 N. Y., 340; *Walsh* v. *Sexton*, 55 Barb., 251.)

The equitable title to this stock is thus passed by the assignment, and it was not necessary to hand over the certificate. A court of equity will compel the donor's representatives to produce the certificate, that the legal title to the stock may be perfected.

As there is great danger of fraud in this sort of gift, courts cannot be too cautious in requiring clear proof of the transaction. This has been the rule from the early days of the civil law (which required five witnesses to such a gift) down to the present time. In this case the proof of the assignment, etc., is entirely clear, the question being as to its effect. The judgment should be affirmed, with costs to be paid out of the estate.

All concur; ALLEN, J., not voting.

Judgment affirmed.