FRANK B. NEWELL, Respondent, *v.* THE NATIONAL BANK OF NORWICH, as Executor, etc., of EMORY S. REYNOLDS, Deceased, Appellant.

Third Department, November 12, 1925.

**Gifts — gift inter vivos — testator apprehending death gave ring to plaintiff, his intimate friend — testator recovered — evidence shows valid gift inter vivos.**

A valid gift *inter vivos* of a ring by the testator to the plaintiff is shown by the evidence in this action, notwithstanding the ring was given to the plaintiff at a time when the testator believed that he was about to die, and though the testator recovered from his then illness and lived for four years thereafter, since the evidence establishes also that the plaintiff was an intimate friend of the testator and that after testator's recovery from his then illness, although he wore the ring on the insistence of the plaintiff, his actions and declarations clearly demonstrated that when first he gave the ring to the plaintiff he intended it as an absolute gift, irrespective of whether he lived or died.

APPEAL by the defendant, The National Bank of Norwich, as executor, etc., from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Broome on the 24th day of November, 1924, upon the decision of the court, rendered after a trial at an adjourned Trial and Special Term before the court without a jury, the jury having been waived.

*Hubert L. Brown,* for the appellant.

*Keenan, Brink & Harrison* [*Thomas J. Keenan* of counsel], for the respondent.

COCHRANE, P. J.:

Emory S. Reynolds, the defendant's testator, was a childless widower. For many years he had been an intimate friend of plaintiff. About March 1, 1918, he was seriously ill with pneumonia and expected to die. He sent for the plaintiff and gave him a diamond ring the title to which is the question to be determined

herein. He caused the ring to be delivered to plaintiff. The circumstances are described as follows by a nurse in attendance: "He told Mr. Newell why he sent for him that morning. He had everything seen to and was ready to go. Had all his affairs seen to with the exception of handing over the ring to him. He was ready to go, or ready· to die, and that his other business was all straightened up." Mr. Reynolds recovered from his illness and lived more than four years thereafter.

Viewed as a gift *causa mortis* the gift cannot be sustained because it is well established that the recovery to health of the donor works *per se* a revocation of the gift. (*Curtiss* v. *Barrus*, 38 Hun, 165; *Grymes* v. *Hone*, 49 N. Y. 17, 20; *Williams* v. *Guile*, 117 id. 343, 348; *Basket* v. *Hassell*, 107 U. S. 602; *Ridden* v. *Thrall*, 125 N. Y. 572, 579, 580.)

The trial court has found that there was a gift *inter vivos*. Such a gift may exist although at the time of making it the donor was under the apprehension of death. In 28 Corpus Juris (p. 622) the rule is stated as follows: "The test whether the gift is one *inter vivos* or one *causa mortis* is not the mere fact that the donor is in extremis, and expects to die, and does die of that illness, but whether he intended the gift to take effect *in præsenti*, irrevocably and unconditionally, whether he lives or dies." In *Hatcher* v. *Buford* (60 Ark. 169; 27 L. R. A. 507) it is said: "But it must not be forgotten that an absolute gift — one *inter vivos* — may be made by one upon his deathbed, and who is aware of the near approach of death from his then ailment. Thornton, Gifts & Advancements (§ 21, p. 24) and authorities cited." There can be no doubt that the ·expectation of death is frequently the inducement for a gift *inter vivos*.

The question then is does the evidence sustain the finding that a gift *inter vivos* was intended. We approach that question with the rule in mind that the presumption is otherwise and that the burden is on the plaintiff to establish such a gift. We have already alluded to the testimony of the nurse. There is also some testimony given by her tending to show that the testator wanted the plaintiff to have the ring regardless of whether the testator lived or died. It clearly appears that after the restoration of the testator to health plaintiff did not want to wear the ring and was willing to return it to the testator for his use as long as he lived. He so expressed himself orally and by letter. The testator was equally insistent that plaintiff should retain the ring. Finally several months after he got well the testator summoned a witness to the office of plaintiff and speaking to this witness in the presence of the plaintiff said: "Frank [plaintiff] wants me to wear this ring, but I don't think

I should do it.   I gave him that ring and I want him to have it, but he insists upon my wearing it now that I am able to be around again.   Under only one consideration will I agree to wear it and I want it thoroughly understood that this ring belongs to Frank and when I die I want it understood that it belongs to him and that he shall have it."   Thereafter the testator had the ring in his possession and wore it until his death.   Other witnesses testify to substantially the same statement at different times by the testator.   The transaction in the office of the plaintiff is insufficient to constitute a gift to him by the testator because it left the donor in possession of the property, but we think it reflects the mental attitude of the testator at the time when during his illness he delivered the ring to the plaintiff.   He had no near relatives.   The most of his property at that time had been willed to charitable purposes as the evidence discloses.   His business and social relations with plaintiff were very intimate.   The circumstances surrounding the transaction and his attitude thereafter and subsequent declarations indicate quite clearly that when during his illness he gave the ring to the plaintiff he did so irrespective of whether he lived or died, although at the time he was apprehensive of death.   If that was his purpose, absolute title then vested in the plaintiff and the subsequent possession and use thereof by the testator was that merely of a bailee.   We think the findings of the trial court are fairly sustained by the evidence.

The judgment should be affirmed, with costs.

Judgment unanimously affirmed, with costs.   The court disapproves the eighth and thirteenth findings contained in the defendant's requests for findings.