[Civ. No. 20588. Second Dist., Div. One. Feb. 28, 1955.]

NELIA SNOKELBERG, as Administratrix With the Will Annexed, etc., Respondent, v. ISAAC S. CRECELIUS et al., Appellants.

Rinehart, Merriam, Parker & Berg for Appellants.

Garber & Garber for Respondent.

DRAPEAU, J.—Mrs. Bertha G. Doane died on February 17, 1953, at the age of 84 years. For several years prior thereto, she lived alone in her home in Monrovia, and did her own shopping and housekeeping.

On January 4, 1953, she became ill. She called her next-door neighbor and asked that the latter send for defendant Irma M. Crecelius. Mrs. Crecelius came to Mrs. Doane's home that evening. She stayed and, with the help of her husband, cared for Mrs. Doane until her death.

On January 19, 1953, Mrs. Doane executed a deed conveying her home to defendants, reserving to herself a life estate.

Thereafter, on February 7th, she executed a bill of sale of her furniture and personal effects, and also a power of attorney in favor of defendant Isaac Crecelius. All three documents were delivered to Mr. Crecelius.

Mrs. Nelia Snokelberg, a neighbor and friend of Mrs. Doane during her lifetime, was appointed administratrix with the will annexed. Decedent's will devised her home to her niece, who lived in Detroit.

By the instant action, said administratrix sought recovery of the real and personal property conveyed by the deed and bill of sale, on the grounds of fraud of defendants and the incompetency of the grantor. And for an accounting.

The trial court ordered cancellation of the deed and bill of sale; quieted title to both the real and personal property in plaintiff administratrix, and gave a money judgment against defendants for the reasonable rental value thereof.

138

Defendants appeal from the judgment.

Appellants assert that the evidence does not support certain of the trial court's findings, to wit:

(1) That decedent was "on January 19, 1953, and for some time prior thereto and continuously thereafter until the time of her death, physically infirm and legally incapacitated by reason of her age, physical and mental infirmities from doing any business or making or entering into any contracts whatever."

(2) That there existed between decedent and appellants during that period "an intimate and confidential relationship" and that appellants procured the execution of the said documents "by taking advantage of decedent's condition and said relationship" with knowledge of her said "incapacity and infirmity" for the purpose of defrauding her.

■ "When a judgment is challenged on the ground of the insufficiency of the evidence to support the findings four principles govern the conduct of the reviewing court, namely: (1) When two inferences are reasonably deducible from the facts the appellate court is forbidden to substitute its deductions for those of the trial court; (2) all conflicts must be resolved in favor of respondent and all reasonable inferences must be indulged in favor of the findings; (3) the power of the appellate court begins and ends with its determination that there is or is not substantial evidence to support the finding (*Estate of Bristol*, 23 Cal.2d 221, 223 [143 P.2d 689]; *Federal Construction Co.* v. *Brady*, 122 Cal.App. 446, 447 [10 P.2d 130]); (4) evidence which may in the transcript appear relatively unsubstantial may have been 'overwhelming in its persuasiveness' when recited in the presence of the court. (*Estate of Bristol, supra.*)" *Barham* v. *Khoury*, 78 Cal.App.2d 204, 211 [177 P.2d 579].

■ "A judgment will not be reversed where there is substantial evidence supporting the findings . . . or where different inferences might rationally be drawn therefrom . . . ■ The same rules apply to the determination of the question of mental capacity; and the finding of the trial court can be overthrown only when they totally lack the support of substantial evidence." *Burgess* v. *Security-First Nat. Bank*, 44 Cal.App.2d 808, 816 [113 P.2d 298]. See also *Drum* v. *Bummer*, 77 Cal.App.2d 453, 457 [175 P.2d 879].

Mr. George C. Highley, head of a funeral club plan of which Mrs. Doane was a member, testified on behalf of respondent as follows:

He had known decedent since 1942 and saw her from time to time. In December of 1952, respondent Snokelberg came to his office and said that Mrs. Doane was failing very fast. And she said, ''Why don't you come by and see her. She wants to see you . . . She wants to change her will. And she (Mrs. Snokelberg) had the old will. I said, 'Tell her to change it, she can write it any way she wants to.' She said, 'She wants to see you about something that has come up lately.' ''

Mr. Highley called on Mrs. Doane on Saturday, January 17, 1953. He talked to her about 25 minutes trying to find out what it was she wanted. But he got no response from her, except a shake of the head and a smile. During this time, Mrs. Crecelius came into the room and stood by the bed. The witness asked her what Mrs. Doane wanted to see him about. Mrs. Crecelius said '' 'She wants to make a deed.' And I said, 'A deed or a will?' She said, 'Oh, no, a deed.' And I said, 'To deed the property?' And she said, 'Yes.' '' Mr. Highley then asked Mrs. Doane: ''Is that what you want? And I got no response.'' He turned to Mrs. Crecelius and said, ''I don't believe she knows what she wants to do. I'll go now and I'll return tomorrow and see how she feels.'' He returned the next day, Sunday, January 18, 1953, and again attempted to converse with Mrs. Doane, but without success. She did not talk.

This witness was interrogated as follows:

''Q. Were you asked to take any part in the execution of the deed or any paper? . . . A. I was asked to have her make the deed. And I am a notary public. Q. You were asked by whom? A. By Mrs.——I can't call her name. Q. By Mr. Garber: Mrs. Crecelius? A. Yes. . . .

''Q. In your opinion when you asked Mrs. Doane, 'Is that what you want?' referring to the matter of the deed, in your opinion did she have any understanding of the question you were then asking her? . . . A. She did not.''

The witnesses, Clarence and Nora Crabb, testified that they visited Mrs. Doane during the first week of February, and that she appeared to be unconscious, in a coma, and did not talk.

It was admitted by the appellants that they did not pay any money for the property conveyed by the deed and the bill of sale.

As is usual in a case of this character, the evidence pro-

duced by appellants was in direct conflict with the testimony of respondent's witnesses:

Mr. Ainley, a real estate broker and notary public, testified that he called to see Mrs. Doane, at the request of Mr. Crecelius, a few days before January 19, 1953. He asked her if she wanted to deed the property to appellants and she said she did. On the 19th of January, 1953, he asked her if she definitely knew what she was doing, and she said "yes." Also, that Mrs. Doane signed the deed unassisted, he acknowledged it, returned to his office and entered it in his notarial register. He then delivered it to Mr. Crecelius. Thereafter he notarized the bill of sale and the power of attorney which Mrs. Doane signed on February 7th. He had no question in his mind but that she understood what was said and knew what she was doing on both occasions.

Mr. Curry, operator of a health store, testified that Mrs. Doane was a patron and that he saw her once or twice a week after 1949 when she came to his store to shop. After she became ill, he saw her in her home when he was delivering merchandise to her. On January 15, 1953, he made his last visit. This was the day Mrs. Doane told him to discontinue the delivery; that Mr. Crecelius would pick up the items as she needed them. He said he thought she was physically weak but he saw nothing wrong with her mental condition.

Dr. Pugh, a traumatic chiropractor, was called to see Mrs. Doane on February 5, 1953. When he asked her questions, her answers were responsive, and her speech coherent, to wit:

After he examined her he said "You have arrythemia. And she said, 'I know my heart is failing. My stomach is all upset too.'" He saw her again on February 8th. At that time there was a definite change in her condition: her heart was somewhat weaker. He saw her for the last time on February 13th and conversed with her. Her speech was coherent and she appeared rational. He signed the death certificate.

There was much more conflicting evidence presented on both sides. However, the record discloses ample substantial evidence to support the trial court's findings and judgment. And, under the rule set forth in *Estate of Bristol*, 23 Cal.2d 221, 223 [143 P.2d 689], the power of this court begins and ends with that determination.

For the reasons stated, the judgment is affirmed.

White, P. J., and Doran, J., concurred.