[Civ. No. 21230.   Second Dist., Div. Three.   May 23, 1956.]

HENRY H. SCHULER, Appellant, v. E. A. WINSTANLEY, Public Administrator, etc., Respondent.

HOBERLY G. E. SPRAY et al., Plaintiffs, v. E. A. WIN-STANLEY, Public Administrator, Respondent; HENRY H. SCHULER, Appellant.

Lyle W. Rucker for Appellant.

Harold W. Kennedy, County Counsel (Los Angeles), and Henry W. Gardett, Deputy County Counsel, for Respondent.

WOOD (Parker), J.—Plaintiff sought to recover personal property, or its value, from the public administrator of Los Angeles County, who was administrator of the estate of John Clark, deceased. The theory of plaintiff's case was that he was the owner of the property by reason of a gift

*causa mortis* from said decedent. Plaintiff appeals from judgment in favor of defendant.

(Mr. and Mrs. Spray, and Mr. and Mrs. Martinson, also filed an action against said administrator, seeking to recover the same property. Defendant administrator filed a cross-complaint therein and named Schuler, the plaintiff in the present action, as a cross-defendant. The pleadings in the Spray action are not in the record on this appeal. According to the judgment herein, the two actions were consolidated. The judgment was in favor of defendant and cross-complainant and was against the plaintiffs and cross-defendants. There is no appeal by any of the plaintiffs in the Spray action.)

The contention of appellant is, in effect, that the court erred in finding that decedent did not give the property to appellant.

John Clark, also known as Robert Lee Clark and Professor Clark, was a teacher and the "founder" of "Science of Characteristics," which pertains to metaphysics. He was also an author of manuscripts relating to that science, and he had copyrights on some of the manuscripts.

Mr. Clark, 79 years of age and without known relatives, had been living at the home of plaintiff Schuler in Eagle Rock about three weeks prior to June 2, 1952. On said June 2 Mr. Clark sustained a broken hip in an accident—when he, a pedestrian in downtown Los Angeles, was struck by a bus. Apparently, at the time of the accident he had two suitcases and a box with him. He was taken to a hospital, and the suitcases and the box were placed in a closet in his room, and other property which he had with him was placed in a deposit box in the office of the hospital. Three days after he was taken to the hospital an operation was performed on his hip, and about two weeks later he was taken from the hospital to the home of Mrs. Murrish in San Gabriel. At that time he was still a bed patient but he was able to move about with assistance. Thereafter pneumonia developed and he died on June 26, 1952.

Plaintiff Schuler, 41 years of age, testified that he met Mr. Clark in 1935, and that as a result of the work of Mr. Clark in the Science of Characteristics Schuler recovered, within six months, from a paralysis which he had had for two and one-half years; after such recovery he became a member of that science organization and an associate teacher of the science, and he has been closely associated with Mr.

Clark since that time. Since 1938 he has been Mr. Clark's secretary and, under the direction of Mr. Clark, he has edited, prepared and distributed lesson sheets pertaining to the science; in the afternoon of June 3 (next day after the accident), Schuler visited Clark at the hospital, and Clark asked where his (Clark's) clothes and valuables were; Schuler replied that they were in the hospital; Clark said that he wanted Schuler to make arrangements to remove them from the hospital—that he wanted his clothes, baggage, and $200 in checkbooks to be removed from the hospital and that Schuler should have possession of them because they would be very important in continuing the work as he had instructed Schuler; Schuler replied that he would "take care of all this" as he had always done; in the evening of June 3 Schuler visited Clark and then, in the presence of Mrs. Schuler and Mr. and Mrs. Grimes, Clark told Schuler that he (Clark) had $200 in cash, a watch, checkbooks, clothes and two grips, and he wanted Schuler to take them home; Schuler then tried to make arrangements to get them but the cashier who had the deposit-box key had gone home; Schuler reported this to Clark who then told him to attend to it as soon as he could—that it "is very important that you protect this property"; Schuler told Clark that Dr. Purdy said that an operation on the hip was necessary and if the operation was not performed Clark would get complications and perhaps he would not last very long; Clark replied that he knew all about that, "but not yet"; the next morning, June 4, Schuler visited Clark and then, in the presence of Mr. and Mrs. Grimes and Mr. Sauer, Clark told Schuler to go downstairs and get the property; when Schuler asked the cashier for the property he replied that it was necessary to have a written authorization from Clark; Schuler replied that Clark's condition was such that he could not write; the cashier told him to ask the supervising nurse to talk to Clark about it; then, at the request of Schuler, the nurse went to see him and Clark told her that Schuler was his associate, that "I have given him possession of my property to take. I want him to take it home. He is affiliated with my work"; then the cashier opened the box; Schuler then checked and received the contents of the box; a document therein was a statement, made by the police, listing personal belongings of Clark; those articles were his cash, keys, passport, watch, and "other small items"; Schuler took those articles to Clark's room, and then the nurse opened

the closet and delivered a package (about 2½′ x 2½′ x 1′) and two suitcases; then Schuler said, "Here it is."; Clark replied: "Fine. You know what to do with it. Take it with you."; then Schuler asked him if he would submit to the operation of putting a nail in his hip; he replied that he would not agree that night—"not on the 4th"; Schuler took the property to his home that night; the next day (June 5) Clark said that he would allow the operation; the operation was performed on June 6; on June 9 Mr. Martinson told Schuler by telephone that Clark said he did not authorize Schuler to take the property, and that Clark told Martinson to tell Schuler to bring the property back to the hospital; in the evening of June 9 Schuler went to the hospital and told Clark what Martinson had said, and he also told Clark that he (Schuler) had the suitcases and bundle in the automobile and he had the other articles with him; Clark said: "Well, who are you going to believe? Whose instructions are you going to follow, mine or theirs?"; Schuler said that he would endeavor to follow Clark's instructions; Clark said: "All right, then, take it with you."; then Schuler put all the articles, which he had taken from the hospital office, on a table and he and Clark checked each article with the list that had been made by the police; then Clark told Schuler to put the articles in the envelope and "Take it home as I have instructed you," and "I have given you instructions. You are to carry them out at this time."; that night Schuler took the property home with him; Clark left the hospital on June 13 and went to the home of Mrs. Murrish; he died on June 26; Schuler found clothes, letters and keys in the suitcases; two of the keys were keys to garages where Clark kept some of his property; on July 1 Schuler and Mr. and Mrs. Spray went to a garage on Irolo Street, unlocked the padlock there with one of the keys, entered the garage, and found some manuscripts, clothing and a desk therein; then they took those things (except the desk) to a garage on Kingsley Drive; they unlocked the padlock there with one of the keys, entered the garage, and found filing cabinets, manuscripts, documents, and copyright certificates therein; he did not know whether there were other keys to the Kingsley garage; on July 2 Schuler and Spray went to the office of Mr. Coburn, an investigator for the public administrator, and discussed estate matters with him; Schuler delivered three banks books and other documents to him, but he did not deliver the copy-

right certificates or the articles received at the hospital; the investigator permitted him to keep manuscripts and other documents so that he could continue the work of the organization.

It may be stated generally that Mrs. Grimes, Mr. Sauer, and Mrs. Schuler gave testimony which corroborated the testimony of Schuler with respect to taking the property from the hospital. Mrs. Grimes testified, among other things, that Schuler and Clark checked the property item by item and that Clark told Schuler to take the property home with him. Mr. Sauer testified, among other things, that (after Schuler had returned the property to the hospital pursuant to Martinson's telephone call) Schuler and Clark checked the property, and then Clark told Schuler "to take it back with him again and keep it." Mrs. Schuler testified, among other things, that Schuler and Clark checked the property (which had been taken from the hospital office) and then Clark told Schuler "to take it home"; and that Clark said further, "You know what to do with it."; Schuler replied, "I will do that."

Mr. Painter testified that about June 15, after Clark had left the hospital, and in the presence of Painter, Clark said to Schuler: "I want you to take over my affairs. You have been instructed as to what to do. I want you to carry out these things that I have instructed you to do. You must not show any signs of weakness as this is an important issue."

Mrs. Martinson, called as a witness by defendant, testified in part that on June 4, 1952, she saw Schuler at the hospital and that he said that Clark "has instructed me as his agent to take these things to my home. I am going to do that."; she (and Mr. Martinson) were at the hospital on June 8, and Clark asked if they knew what happened to his belongings which he had with him at the time of the accident; they replied that they were present when the things were taken by Schuler and that the things were safe in the home of Schuler; Clark said that he wanted to see his belongings; he asked Mr. Martinson to call Schuler regarding the things; after the funeral, Schuler told them that Clark had told him that "he would be the agent or secretary as he had done in mailing the sheets [regarding science], taking in the dues, the UTS dues, and so forth."

Mr. Martinson, called as a witness by defendant, testified in substance the same as Mrs. Martinson had testified, ex-

cept that he did not testify regarding the alleged statement by Schuler after the funeral.

In rebuttal, Schuler was asked if he ever stated to Mr. Martinson or Mrs. Martinson that he was Clark's agent to get property at the hospital. He replied, "I do not recall that I used that particular term." He testified further that he said, "I was handling Prof. Clark's affairs and that I had been instructed to get his property."

According to the complaint, the property sought to be recovered is as follows: $3,613.68, being the aggregate amount on deposit in five banks; three certificates of copyright registration; $200 cash, a watch, and minor articles, which were in deposit box at the hospital; and various manuscripts and articles which were found in the garages. It was stipulated that one of the alleged bank deposits (for $1,259.58) was not in existence. It seems to be agreed that the other bank accounts are not to be considered a part of the alleged gift *causa mortis*. The property now claimed under the alleged gift *causa mortis* consists of the copyrights, manuscripts and other articles which were in the garages, and the $200 cash, watch and other articles which were in the deposit box at the hospital.

Some of the findings of the court were: on March 30, 1953, Schuler made his first claim of ownership of the property; one of the certificates of copyright (AA71003) was not contained in the Kingsley Drive garage; the other two certificates of copyright were found in said garage after the death of Clark; it is not true that the sole means of access to said garage was by means of one key; two keys to said garage had been in possession of the owner of the garage, and one of the keys was lost and the other one remained in possession of the owner during the lifetime of Clark; it is not true that on June 3, 1952, or at any other time, Clark made a gift of the contents of said garage on Kingsley Drive, or any portion thereof, to Schuler by delivering to him the sole means of obtaining possession of said property; it is true that on June 3, 1952, Clark was critically ill in a hospital; it is not true that on said June 3, or at any other time, Clark made a gift or intended to make a gift of any property to Schuler by reason of having instructed the keeper of the deposit box at the hospital to allow Schuler to withdraw the contents of the box; on June 4, 1952, Clark instructed the keeper of said box to release the contents of the box to Schuler for the purpose of bringing the contents to Clark's hospital room; on

said June 4 Clark instructed Schuler to take the contents of the box, and also two suitcases and a package which were in the hospital room, to Schuler's home, which was also the residence of Clark, and to keep them there and carry out instructions previously given concerning them; Schuler did not receive any of said articles as his property; on June 9, 1952, Schuler brought the property back to the hospital, and Clark again instructed him to take the property to Schuler's home; on said June 4 or June 9 there was no manual delivery of any property from Clark to Schuler, and there was no delivery of the means of obtaining any property; on said June 4 or June 9 Clark spoke no express words of gift to Schuler concerning any of his property; it is not true that the acts of Clark in instructing the employees of the hospital to release the contents of his deposit box to Schuler, or in instructing Schuler to take the contents of the suitcases, package, and deposit box to his home, were done with the intent of giving to Schuler any of Clark's right, title, or interest in said property.

Appellant argues that since there was little, if any, conflicting evidence, the question on appeal pertains to the sufficiency of the evidence to support the judgment. He argues further that: Clark intended to and did make a gift to him of the copyrights and manuscripts relating to the "Science of Characteristics"; the delivery thereof was made symbolically by Clark by the delivery of keys to the garages where the documents were stored; the gift was made in contemplation of death; Clark died of the ailment which he feared at the time the gift was made; and appellant accepted the gift and took possession of it when it was made. He argues further that there was no object in Clark telling Schuler to take the property home and follow instructions, other than that Schuler was to use the property to carry on the "Science of Characteristics"; it was not unnatural that Clark should give to Schuler, who was the one person who could carry on the science, the only means by which the science could be carried on, namely, the copyrights and manuscripts; Clark's entire line of thought, as shown by his statements to Schuler, indicates only one thing, namely, that Clark believed he was not long for this world and he intended that Schuler should use the means of carrying on the science; when the suitcases containing the keys to the garages were given to Schuler there was a symbolic delivery of the documents which were in the garages.

The essential elements of a gift *causa mortis* are stated in *Barham* v. *Khoury*, 78 Cal.App.2d 204 [177 P.2d 579], at page 209. It is not necessary to repeat them here. ▉ Gifts *causa mortis* "contravene the general rules prescribed by statute for the testamentary disposition of property and for this reason they should be established by clear and convincing proof of the requisites of such a gift." (*Barham* v. *Khoury, supra,* p. 211.) Whether Mr. Clark made such a gift was a question of fact for the determination of the trial judge. Appellant asserts, however, as above stated, that there was little, if any, conflict in the evidence and that the court should have found that Mr. Clark intended to and did make the gift. The testimony of Schuler was contradicted by the testimony of Mr. and Mrs. Martinson to the effect that Schuler told them that he took the property as agent. Even if there had been no testimony expressly contradicting evidence on behalf of appellant, the trial judge was not required to find that the evidence on behalf of appellant established a gift *causa mortis*. In *Barham* v. *Khoury, supra,* the question was whether the trial court was required to find the facts as given in the uncontradicted testimony of appellant [the alleged donee]. The court said therein at pages 211 and 212: "[I]f from all the facts in evidence as well as from appellant's testimony the trial court drew inferences and made deductions which are not unreasonable the judgment cannot be reversed merely because no witness took the stand to contradict appellant's narrative of the events of June 25, 1945 [date alleged gift was made]." Furthermore, in the present case, even if the court believed the testimony on behalf of appellant, the court was not required to conclude therefrom that a gift was made. There was no express statement by Clark that he gave the property to Schuler as Schuler's own property. On the day of the accident Clark left Schuler's home, apparently intending to make a trip to Santa Barbara, and at the time of the accident he had two suitcases with him. Clark was taken to the hospital from the scene of the accident, and the suitcases were also taken there. While at the hospital Clark expressed concern regarding the property he had with him at the time of the accident. The statements of Clark, with respect to his property which was at the hospital, included statements that Schuler should take the property home, take it with him, and follow instructions that had been given. The home of Schuler was also the home

of Clark. The statements of Clark did not include any reference to the garage keys which allegedly were in one of the suitcases. ■ The evidence was susceptible of the interpretation, among others, that Clark directed Schuler as his agent to remove the property from the hospital to their mutual home for safekeeping, and for use in continuing the science work under previous instructions of Clark. On appeal all substantial conflicts in the evidence must be resolved in favor of respondent and all reasonable inferences must be indulged in favor of the findings. As above shown, the court found in effect that there was no symbolic delivery of any of the property which was in the garages; and that Clark did not intend to make, and did not make, a gift of any of his property to Schuler. The findings of the court are supported by the evidence.

Respondent (defendant) asserts on appeal that a copyright is not a proper subject of a gift *causa mortis* for the reason that a valid assignment of a copyright must be in writing. In view of the above conclusion with reference to the sufficiency of the evidence, it is not necessary to decide this contention.

The judgment is affirmed.

Vallée, J., concurred.

SHINN, P. J.—I concur. The only question in this case was whether plaintiff became the owner of certain personal property through a gift thereof by decedent Clark. In disposing of this simple issue the court made 29 findings and 9 conclusions of law. In the lengthy and involved findings of evidentiary matter I do not discover any clear-cut, definite finding as to ownership of the property. Since plaintiff makes no point of it I am concurring in the opinion upon the assumption that the evidentiary facts found could be pieced together in such fashion as to supply the equivalent of a finding of the ultimate fact.